## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ALAN MEYER and DAVID CORNELIUS,** **Individually and on behalf of all others** **similarly situated,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **No. 17-cv-2565 (EGS/GMH)** |
| **PANERA BREAD CO.,** | ) ) | |
| **Defendant.** | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

As relevant here, Plaintiffs Alan Meyer and David Cornelius have brought this putative

collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and

the District of Columbia Minimum Wage Act ("DCMWA"), D.C. Code § 32-1001 *et seq.*

Plaintiffs, who were assistant managers at two restaurants owned by Defendant Panera, LLC

("Defendant" or "Panera"), claim that they and other assistant managers employed by Defendant

were misclassified as exempt employees under the FLSA and DCMWA and therefore were

illegally denied overtime wages for hours that they worked in excess of forty hours per week.

Plaintiffs further allege that Defendant failed to keep accurate records of the time that Plaintiffs

worked and failed to keep required payroll records, and that all of these violations were willful.

Plaintiffs have filed a Motion for Conditional Certification and Court-Authorized Notice

Pursuant to Section 216(b) of the FLSA and the DCMWA.[1]  ECF No. 36.  The motion is ripe for

---

[1] This case was referred to the undersigned for full case management.  Local Civil Rule 72.2 permits a magistrate judge to "hear and determine any pretrial motion other than those specified" in Local Civil Rule 72.3.  LCvR 72.2(a). Local Civil Rule 72.3 lists, among other submissions, "[m]otions for judgment on the pleadings, for summary judgment, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, or otherwise dismiss an action involuntarily" as motions that a magistrate judge must address in a report and recommendation.  LCvR 72.3(a)(3).  However, a motion for conditional certification of a collective action

adjudication.[2]  For the reasons that follow, the undersigned will grant in part and deny in part Plaintiffs' motion for conditional certification.

## I.     BACKGROUND

Plaintiffs filed their original complaint on March 29, 2017.  ECF No. 1.  On January 30, 2018, Plaintiffs filed their original motion for conditional certification (ECF No. 11) and Defendant filed a motion to dismiss Plaintiffs' original complaint (ECF No. 10).  On May 17, 2018, Plaintiffs, with Defendant's consent, filed the operative Amended Complaint (ECF No. 29), which substituted Panera, LLC, as the defendant for Panera Bread Co., and "clarif[ied] the scope of the proposed collectives."  ECF No. 30 at 1.  According to the Amended Complaint, Defendant is a Delaware corporation operating hundreds of restaurants in the United States and Canada, and which had an annual revenue of over $2.5 billion in 2015.  ECF No. 29, ¶¶ 3, 30–31.  Plaintiffs allege that they were employed as assistant managers at two different Panera Bread restaurants:

---

is not listed in Local Rule 72.3.  The local rules therefore indicate that a such a motion may be heard and determined by a magistrate judge.  The weight of authority supports the interpretation that such motions are non-dispositive and therefore may be finally resolved by a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A).  *See, e.g.*, *Warman v. Am. Nat'l Standards Inst.*, 193 F. Supp. 3d 318, 321 n.1 (S.D.N.Y. 2016); *Bittencourt v. Ferrara Bakery & Café Inc.*, 310 F.R.D. 106, 110 n.1 (S.D.N.Y. 2015) ("A United States magistrate Judge has the authority to rule on a motion to authorize a collective action.") *Esparza v. C&J Energy Servs. Inc.*, No. 5:15-CV-850, 2016 WL 1737147, at *1 (N.D. Tex. May 2, 2016) ("A motion for conditional class certification is nondispositive."); *Dimery v. Universal Prot. Serv., LLC*, No. 6:15-cv-2064, 2016 WL 7666136, at *1 n.1 (M.D. Fla. Mar. 24, 2016) ("[A] motion for conditional certification under the Fair Labor Standards Act is a non-dispositive matter, and therefore appropriate for a magistrate to decide under 28 U.S.C. § 636(b)(1)(A)."); *Bearden v. AAA Auto Club South, Inc.*, No. 2:11-cv-3104, 2013 WL 1181474, at *1 n.2 (W.D. Tenn. Mar. 18, 2012) ("'[A] motion for conditional certification under the FLSA is a nondispositive matter,' and therefore appropriate for a magistrate to decide under 28 U.S.C. § 636(B)(1)(A)." (quoting *Rutledge v. Claypool Elec., Inc.*, No. 2:12–cv–0159, 2013 WL 435058, at *2 (S.D. Ohio Feb. 3, 2013))); *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 383 (E.D.N.Y. 2010) (collecting cases from 2d Circuit); *Geller v. Bowers*, No. CV 11-874, 2012 WL 1895961, at *1 n.1 (N.D. Cal. Apr. 13, 2012) (citing with approval precept that, because they seek a preliminary determination, motions for conditional certification may be decided by a magistrate judge).

[2] The docket entries connected with this motion are the Amended Complaint (ECF No. 29); Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the Fair Labor Standards Act and the D.C. Minimum Wage Act and Exhibits (ECF Nos. 36 through 36-21); Defendant's Opposition to Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to the Fair Labor Standards Act and the D.C. Minimum Wage Act and Exhibits (ECF Nos. 38 through 18-21); and Plaintiffs' Reply Memorandum of Law in Support of Motion to Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the Fair Labor Standards Act and the D.C. Minimum Wage Act and Exhibits (ECF Nos. 39 through 39-2).

Mr. Meyer worked at a location in Washington, D.C., from April 2015 until October 2015; Mr. Cornelius worked at a location in Birmingham, Alabama, from October 2013 until September 2015. *Id.*, ¶¶ 19–20, 25–26. Plaintiffs assert that, as assistant managers of restaurants operated by Defendant, they "predominantly perform[ed] non-managerial work" but were nevertheless classified as exempt from the overtime provisions of the FLSA (and, in Mr. Meyers' case, the D.C. Wage Laws). *Id.*, ¶¶ 2, 5–7, 22, 28, 36. They further contend that each of them regularly worked more than forty hours per week and, as a consequence of their misclassification, did not receive overtime pay. *Id.*, ¶¶ 21, 27.

The Amended Complaint also alleges that Defendant "has the power to control the terms and conditions of employment for Plaintiffs and those similarly situated, including with respect to their compensation and classification as exempt or non-exempt employees"; that it "maintained control, oversight, and direction over Plaintiffs and similarly situated employees"; and that it "applies the same employment policies, practices, and procedures to all [assistant managers]." *Id.*, ¶¶ 33–35. Plaintiffs contend that Defendant's violations of the FLSA and the DCMWA were willful. *Id.*, ¶¶ 71–72.

As relevant here, the Amended Complaint alleges a collective under the FLSA consisting of all similarly situated assistant managers

> whom Defendant classified as exempt from overtime requirements, who worked more than 40 hours per week for Defendant in the United States—excluding New York, New Jersey, [California,][3] and Massachusetts—at any time between March 25, 2014 and the date of final judgment in this matter, and who elect to join this action (the "FLSA Collective").

---

[3] In its reply brief, Plaintiffs "agree to exclude California [assistant managers] from the collective" based on Panera's representation that assistant managers] in California were "paid on an hourly basis given the more stringent exemption requirements under California law." ECF No. 36-14 , ¶ 2; ECF No. 39 at 9 n.1.

*Id.*, ¶ 39 (footnote omitted).  It further alleges a collective under the DCMWA consisting of all similarly situated assistant managers classified as exempt, who worked more than 40 hours per week for Defendant in Washington, D.C., from March 25, 2014, through February 27, 2015, and who elect to join the action (the "DCMWA Collective").[4]  *Id.*, ¶ 40.

After the Amended Complaint was filed, the Court denied as moot Defendant's motion to dismiss the original complaint.  Minute Order dated May 21, 2018; *see, e.g.*, *Gray v. D.C. Pub. Sch.*, 688 F. Supp. 2d 1, 6 (D.D.C. 2010) (collecting cases holding that a motion to dismiss directed to a complaint is mooted when an amended complaint is filed); *Nader v. Democratic Nat. Comm.*, 590 F. Supp. 2d 164, 167 n.2 (D.D.C. 2008), *aff'd*, No. 09-7004, 2009 WL 4250599 (D.C. Cir. Oct. 30, 2009).  Plaintiffs' original motion for conditional certification was similarly denied as moot.  Minute Order dated May 21, 2018; *see, e.g.*, *Lawrence v. Maxim Healthcare Servs., Inc.*, No. 1:12CV2600, 2013 WL 12178607, at *1 (N.D. Ohio Apr. 26, 2013) (denying as moot motion for conditional certification filed prior to amended complaint that changed definition of collective); *see also In re Amazon Fulfillment Ctr. Fair Labor Standards Act (FLSA) and Wage and Hour Litig.*, No. 14-MD-2504, 2014 WL 3695750, at *1 (W.D. Ky. July 14, 2014) (noting that plaintiffs in one constitutive case in multidistrict litigation "repeatedly mooted their conditional certification motion [by] amend[ing] the complaint prior to any court determination"); *Lytle v. Lowes Home Ctrs., Inc.*, No. 8:12-cv-1848, 2014 WL 103463, at *6 (M.D. Fla. Jan. 10, 2014) ("Based upon the

---

[4] As discussed in Section III.D, *infra*, Plaintiffs derive the starting date for the collectives, that is, March 25, 2014, by subtracting three years from the date the original complaint was filed in this case—the FLSA has a three-year statute of limitations for willful violations, *see* 29 U.S.C. § 255(a), and the DCMWA has a three-year statute of limitations for any violation, whether willful or not, D.C. Code § 32-1308(c)(1)—and then subtracting 249 days during which they assert a tolling agreement between Panera, LLC and potential collective members was in place.  As discussed in Section III.C, *infra*, February 27, 2015, the proposed end date for the DCMWA Collective corresponds to the date that the D.C. statute was amended to allow litigation to proceed as class actions in which potential class members must opt out, rather than as collective actions in which potential collective members must opt in.  Following discovery, Plaintiffs intend to seek certification of an opt-out class action under Rule 23 of the Federal Rules of Civil Procedure for any allegedly misclassified assistant managers who worked at Panera on or after February 27, 2015.

filing of [the] Second Amended Complaint, the Court denied as moot [the] Motion for Conditional Certification in order to promote accuracy in the filings and clarity of the record.").

Plaintiffs thereafter filed a renewed Motion for Conditional Certification on June 5, 2018. ECF No. 36 at 2.  That motion requests conditional certification of the FLSA Collective and the DCMWA Collective, as well as ancillary relief, including authorizing notice to potential collective members.  The motion is supported by declarations from nine former employees of Defendant (ECF Nos. 36-5 through 36-11 and 36-19 through 36-20), two of which Defendant has sought to strike, contending that the declarations are "a sham."[5]  ECF No. 21-1 at 1.  The Court's denial of Defendant's motion to strike is the subject of a Memorandum Opinion and Order filed contemporaneously with this one.

## II.   DISCUSSION

### A.   Legal Standard

Both the FLSA and the DCMWA require employers to pay their workers the minimum wage and, if the employee works more than forty hours in a workweek, overtime compensation. 29 U.S.C. § 207(a)(1); D.C. Code § 32-1003.  Both statutes also empower employees to bring actions on their own behalf and on behalf of other employees "similarly situated" in a collective action.  29 U.S.C. § 216(b); D.C. Code § 32-1308(a)(1)(C)(iii); *see also Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49, 52 (D.D.C. 2012).  "D.C. law permits DCMWA . . . claims to be brought '[c]onsistent with the collective action procedures of the Fair Labor Standards Act.'"  *Stephens v. Farmers Rest. Grp.*, 291 F. Supp. 3d 95, 106 (D.D.C. 2018).  Unlike classes formed pursuant to Rule 23 of the Federal Rules of Civil Procedure, in which "potential class members are parties to the suit unless they affirmatively opt *out*," in a wage and hour collective action, "only plaintiffs

---

[5] On July 3, 2018, in response to an order of the Court, the parties elected to stand on the briefing of Defendant's motion to strike as it had been filed originally.  ECF No. 41.

who affirmatively opt *in* can benefit from the judgment or be bound by it." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161 (S.D.N.Y. 2008) (quoting *Lachapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975)); *see also Munoz v. Big Valley, Inc.*, 915 F. Supp. 2d 46, 48 (D.D.C. 2013).

Courts in this Circuit and others have implemented a two-stage inquiry for determining when a collective action is appropriate. *Stephens*, 291 F. Supp. 3d at 105. The first stage, referred to as "conditional certification," requires the Court to determine whether it is appropriate "to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether [an] FLSA violation has occurred." *Dinkel*, 880 F. Supp. 2d at 52–53 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)). "If conditional certification is granted, then the matter proceeds as a collective action through the close of discovery, at which time the defendant may move for 'decertification,' prompting a 'more searching' inquiry into whether putative class members are in fact 'similarly situated.'" *Stephens*, 291 F. Supp. 3d at 105 (quoting *Ayala v. Tito Contractors*, 12 F. Supp. 3d 167, 170 (D.D.C. 2014)).

At issue here is the first stage—conditional certification. This initial stage requires that the plaintiff make only a "modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Castillo v. P&R Enters., Inc.*, 517 F. Supp. 2d 440, 445 (D.D.C. 2007) (quoting *Chase v. AIMCO Props.*, 374 F. Supp. 2d 196, 200 (D.D.C. 2005)). The bar at this stage is quite low. *Ayala*, 12 F. Supp. 3d at 170 (collecting cases). The plaintiff must present, through the allegations in his pleadings and any affidavits submitted with the motion, "some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected [a plaintiff] and the manner in which it affected other employees." *Id.* (quoting *Symczyk v. Genesis HealthCare Corp.*,

656 F.3d 189, 193 (3d Cir. 2011)).  At this early juncture, the Court accepts as true the plaintiff's

factual allegations set forth in his complaint.[6]  *See id.* at 169.  Furthermore, the court should draw

all reasonable inferences in the plaintiff's favor at this initial stage.  *See, e.g.*, *Jeong Woo Kim v.*

*511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 446 (S.D.N.Y. 2013).

    "[D]efendants may not thwart conditional certification merely by contradicting plaintiff's

claims, even if defendants provide 'voluminous documentation' purporting to show that no

violations occurred."  *Stephens*, 291 F. Supp. 3d at 105 (quoting *Bhumithanarn v. 22 Noodle*

*Market Corp.*, No. 14-cv-2625, 2015 WL 4240985, at *4 (S.D.N.Y. July 13, 2015) (finding

defendants' reliance on affidavits and payroll logs submitted in opposition to motion for

conditional certification "misplaced at th[e] [conditional certification] stage of the proceedings")).

Rather, courts should "refrain from resolving factual disputes and deciding matters going to the

merits," *id.* (quoting *Dinkel*, 880 F. Supp. 2d at 53), because as noted above, "[p]laintiffs at this

stage must make only a modest factual showing that they, along with the proposed class members,

were subject to the same policies that violated the FLSA," *Bhumitharnan*, 2015 WL 4240985, at

*4; *see also Friscia*, 2018 WL 3122330, at *7 ("[A]t th[e] [conditional certification] stage, [the

---

[6] Defendant's argument that the Court should apply a higher standard—a "modest 'plus'" standard—because Plaintiffs rely on certain evidence filed in *Friscia v. Panera Bread Co.*, No. 2:16-cv-3754 (D.N.J. June 26, 2016), an FLSA case against Panera for which discovery has been completed ECF No. 38 at 32 (quoting *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 482 (S.D.N.Y. 2016)], is unsupported in the case law.  The opinions it cites approve a slightly heightened standard for conditional certification when discovery focused on that subject has been completed in the case at issue, *see Korenblum*, 195 F. Supp. 3d at 482; *Basco v. Wal-Mart Stores, Inc.*, No. Civ.A. 00-3184, 2004 WL 1497709, at *1, 4 (E.D. La. July 2, 2004), or when discovery had been completed in a prior case in which the same counsel for plaintiff sought and failed to conditionally certify the identical collective, *see Sloane v. Gulf Interstate Field Servs., Inc.*, 4:16-cv-1571, 2017 WL 1105236, at *1 (M.D. Pa. Mar. 24, 2017) ("This is the second attempt by the same counsel to seek certification of a collective action wage and hour lawsuit on a nationwide basis against Gulf Interstate Field Services . . . .  The first attempt failed." (emphasis omitted) (quoting Defendant's Brief in Opposition to Motion for Conditional Certification)).  In this case, although Plaintiffs rely on certain evidence filed in connection with the motion for conditional certification in the *Friscia* matter, the plaintiffs there are not represented by counsel for Plaintiffs here.  Further, Plaintiffs here have not yet had the opportunity to develop the record in this case, as discovery has not been taken.  It would not, therefore, be appropriate to hold them to a higher standard of proof at this early stage of the litigation.  Indeed, in the *Friscia* matter, itself, the court recognized that some discovery had been taken, but nevertheless "appli[ied] the traditional stage-one standard" because fact discovery had not yet closed.  *Friscia v. Panera Bread Co.*, No. 2:16-cv-3754, 2018 WL 3122330, at *8 (D.N.J. June 26, 2018).

plaintiff] needs to show only that 'similarly situated plaintiffs do in fact exist.'" (quoting *Zavala v. Wal Mart Stores*, 691 F.3d 527, 536 n.4 (3d Cir. 2012))

## B.     Conditional Certification of FLSA Collective

The FLSA requires employers to pay their employees a wage equal to one and one-half times their regular wage after the employee has worked more than 40 hours during a work week. 29 U.S.C. § 207(a)(1).   However, employers do not have to pay overtime wages to individuals "employed in a bona fide executive, administrative, or professional capacity."   29 U.S.C. § 213(a)(1).   Rather, such employees are classified as "exempt" from the overtime provisions of the statute.   Plaintiffs' core allegations assert that Defendant misclassified assistant managers at its restaurants as exempt from the FLSA's overtime provisions (presumably pursuant to the executive exemption) although Defendant was aware (and, indeed, required) those employees to perform primarily non-managerial work, therefore entitling them to overtime pay for the hours they worked over 40 per week.   ECF No. 29, ¶ 2; ECF No. 36-1 at 14–15.   Plaintiffs seek conditional certification of a collective that includes assistant managers classified as exempt from the FLSA's overtime provisions who worked more than 40 hours in a week at Panera restaurants operated by Defendant.   The putative collective is nationwide, with the exception of employees in New York, New Jersey, California, and Massachusetts.   In support of their motion, Plaintiffs have filed, among other things, declarations from assistant managers at Panera restaurants in Washington, D.C. (ECF No. 36-5 (Alan Meyer)), Alabama (ECF No. 36-6 (David Cornelius); ECF No. 36-8 (Steven Willms)), Virginia (ECF No. 36-7 (Chelsea Romano)), Massachusetts (ECF No. 36-9 (Joseph Whitfield)), New Jersey (ECF No. 36-10 (Jacqueline Friscia)), North Carolina (ECF No. 36-19 (Michele Thomas)), and Wisconsin (ECF No. 36-20 (Elizabeth Tymus)); a declaration from a general manager and training manager in New Jersey (ECF No. 36-11 (Diana Manrique));

a declaration from the vice president of human resources for Panera (ECF No. 36-12 (Jaynanne Calaway-Habeck)); and nearly-identical assistant manager job postings from Alabama, California, Georgia, Illinois, Indiana, Kentucky, Michigan, Minnesota, Missouri, New Jersey, New York, North Carolina, Pennsylvania, Tennessee, and Washington (ECF No. 36-4).

The declarations from the assistant managers are very similar to each other, and assert that the declarants were assistant managers categorized as exempt employees by Defendant, that they regularly worked more than 40 hours per week, and that they were not paid overtime wages for the number of hours over 40 that they worked per week.  ECF No. 36-5, ¶¶ 1, 4–5; ECF No. 36-6, ¶¶ 1, 5–6; ECF No. 36-7, ¶¶ 1, 2–3; ECF No. 36-8, ¶¶ 1, 4–5; ECF No. 36-9, ¶¶ 1, 4–5; ECF No. 36-10, ¶¶ 2, 8, 12; ECF No. 36-19, ¶¶ 1, 7–8; ECF No. 36-20, ¶¶ 1, 6–7.  They further aver that the majority of their training was geared toward learning the non-managerial tasks performed by non-exempt employees, that the majority of their work time was spent on such non-managerial tasks while the general managers performed the managerial work, and that directives as to the management of the restaurants—including budgets, prices, restaurant layouts, marketing and promotion strategies, hours of operation, and dress code—came from Panera's corporate headquarters, sometimes filtered through regional directors.  ECF No. 36-5, ¶¶ 2–3, 6–15; ECF No. 36-6, ¶¶ 2–4, 7–15; ECF No. 36-7, ¶¶ 5–14[7]; ECF No. 36-8, ¶¶ 2–3, 6–16; ECF No. 36-9, ¶¶ 2–3, 7–16; ECF No. 36-10, ¶¶ 3–7, 14–15; ECF No. 36-19, ¶¶ 2–4, 9–17; ECF No. 36-20, ¶¶ 2–5, 8–18.  Some of the assistant manager declarants also state that they either observed other assistant managers performing the same non-managerial work as they, themselves, did, or learned through speaking with other assistant managers that their mix of duties was similar.  ECF No. 36-5, ¶¶ 16–17 (two other assistant managers at District of Columbia restaurant at which declarant worked, and

---

[7] Ms. Romano does not discuss her training as an assistant manager.

others at another District of Columbia location); ECF No. 36-7, ¶ 4 (one other assistant manager at the restaurant at which declarant worked); ECF No. 36-10, ¶¶ 16, 18 (an unidentified number of assistant managers at various locations in New Jersey); ECF No. 36-19, ¶¶ 18 (four other assistant managers at two North Carolina restaurants at which declarant worked); ECF No. 36-20, ¶¶ 19 (two other assistant managers at Wisconsin restaurant at which declarant worked, and another assistant manager at location at which declarant trained).  Each of the assistant manager declarants states that, in order to comply with Panera's practice of "strictly control[ling] labor costs," hourly workers were often sent home and assistant managers were required to complete those non-exempt workers' job duties.  ECF No. 36-5, ¶ 7; ECF No. 36-6, ¶ 8; ECF No. 36-7, ¶ 6; ECF No. 36-8, ¶¶ 7–8; ECF No. 36-9, ¶ 8; ECF No. 36-10, ¶ 9; ECF No. 36-19, ¶ 10; ECF No. 36-20, ¶¶ 9–10.  The general manager declarant asserts similar facts—that she observed assistant managers at a number of New Jersey locations performed primarily non-managerial work without being eligible for overtime pay, and that corporate headquarters established the policies and procedures to be followed in the restaurants.  ECF No. 36-11, ¶¶ 4–5, 8–10, 12–13.

Panera's vice-president of human resources asserts that, in 2016, Defendant reclassified assistant managers from exempt employees to hourly non-exempt in response to "the federal government's publication of a final rule that would have substantially increased the salary level requirement for employees to be classified as exempt from the [FLSA's] minimum wage and overtime requirements."  ECF No. 36-12, ¶ 5.  Plaintiffs point out that although Defendant allegedly reclassified assistant managers as non-exempt and began paying them overtime, the duties performed by assistant managers did not change, thus suggesting that the original classification as exempt was improper.  ECF No. 36-1 at 11 n.2.

Plaintiffs have thus presented evidence that the assistant managers in the putative collective were classified as exempt from the FLSA's overtime provisions although the bulk of the work that they performed was non-managerial. They have further presented evidence that assistant managers regularly worked more than 40 hours per week. That is, Plaintiffs have presented evidence that their classification as exempt was improper under the statute, and that they should been paid overtime wages for any hours they worked over 40 per week. However, Plaintiffs do not allege that it was Defendant's official policy that assistant managers perform primarily non-managerial duties. Therefore, "to obtain conditional certification, [they] must make a modest factual showing that they were subject to a common 'de facto illegal policy,'" by "providing evidence of 'some identifiable nexus which binds the named plaintiffs and potential class members together as victims of a particular practice.'" *Costello v. Kohl's Ill., Inc.*, No. 13-CV-1359, 2014 WL 4377931, at *4 (S.D.N.Y. Sept. 4, 2014) (quoting *Jenkins v. TJX Cos.*, 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012)). Although it is a close call, Plaintiffs have cleared the low bar that is applied at this juncture.

Plaintiffs have presented evidence through declarations that Panera's corporate headquarters exerted significant control over the operations of its restaurants. They have indicated that the ordinary management hierarchy—regional director, general manager, assistant manager— tended to require that assistant managers perform non-managerial duties, as the bulk of the managerial duties were reserved, at the restaurant level, to the general manager. Moreover, they have linked the performance of these non-managerial duties to a corporate policy of strictly controlling labor costs. And they have done so through declarations from employees working in seven different states around the country, as well as job postings from fifteen states.[8]

---

[8] Defendant is correct that those job postings do not contain a description of the job duties of assistant managers. However, the fact that they are materially identical, including as to the vague description of the position and the requirements for candidates "[is] some evidence that [Defendant] viewed the position the same, whether it was in Ohio or Oregon." *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 772 (N.D. Ohio 2015).

This case is therefore similar to *Costello*.  In that case, the plaintiffs sought conditional certification of a nationwide collective of assistant store managers who were allegedly misclassified as exempt by a company that operated over 1,000 stores.  *Costello*, 2014 WL 4377931, at *1.  After engaging in discovery related to the motion for dissemination of court-authorized notice to the putative collective, the plaintiffs presented evidence "from only six [assistant store managers] who have worked across the country and consents to sue from six additional [assistant store managers]" from various states in the country.  *Id.* at *6.  The evidence, which comprised deposition testimony from opt-in plaintiffs based on their "observations and discussions within the stores that they worked and communications with other [assistant store managers] at districtwide meetings," that assistant store managers "engage[d] primarily in non-managerial duties."  *Id.* at *5.  For example, one plaintiff testified that she had spoken to assistant managers at various stores who complained that they could not "get anything done" because they were always performing non-managerial tasks, such as being "on a register" or "in customer service."  *Id.*  There was also testimony that assistant store managers had "to pick up the slack" for hourly wage-earners—that is, perform the duties of hourly wage-earners—due to budgetary concerns at the corporate level.  *Id.* at *6.  The district court rejected the plaintiffs' argument that the fact that they had presented evidence from assistant store managers in more than 3 states "mandated" conditional certification, noting that "the probity of drawing . . . an inference [of a common illegal policy or plan] will turn in part on the number of plaintiffs from whom the Court has evidence compared to the size of the pool of potential opt-in plaintiffs."  *Id.*  Finding the "number and geographic dispersion of the [assistant store managers] who ha[d] opted in to [the] action" to "weigh only slightly in favor of conditional certification," the district court nevertheless conditionally certified the collective and authorized nationwide notice in light of the presentation

of a "substantive theory"—that is, the budgetary concerns that led to the necessity that assistant store managers perform non-managerial duties—that "tie[d] Plaintiffs' claims to a policy or practice that affected [assistant store managers] nationwide." *Id.*

So it is here. Plaintiffs' eight declarations from seven states have indicated that Defendant's corporate policy of cutting labor costs "affected [assistant managers] nationwide," *id.*, causing them to spend a majority of their time performing non-managerial duties.[9] Those declarations also aver that assistant managers regularly worked more than 40 hours per week but were not paid overtime. Other evidence (such as job postings from fifteen states) indicate that Defendant had uniform expectations of assistant managers. Moreover, courts other than the court in *Costello* have conditionally certified nationwide collective actions based on a similar quantum of evidence. *See, e.g.*, *Indergit v. Rite Aid Corp.*, Nos. 08 Civ. 9361, 08 Civ. 11364, 2010 WL 2465488, at *1, 5–6 (S.D.N.Y. June 16, 2010) (conditionally certifying nationwide collective based on evidence that corporate management exercised control over operation of retail branches and that store managers were classified as exempt across the country, as well as affidavits from three store managers that they did not perform primarily managerial duties and that they were subject to "a corporate nationwide program to reduce the amount of overtime compensation paid to non-exempt employees" by requiring exempt employees to perform non-managerial duties); *see also Essex v. Children's Place, Inc.*, Civil Action No. 15-5621, 2016 WL 4435675, at *6 (D.N.J.

---

[9] To be sure, some of the declarations are from assistant mangers who are not part of the putative collective in this case, but, rather, worked in states that are included in *Friscia*, a different, but similar, FLSA action in the District of New Jersey. *Friscia*, No. 2:16-cv-3754 (D.N.J. June 26, 2016). Nonetheless, given that Plaintiffs here allege an illegal policy that "affected [assistant managers] nationwide," *Costello*, 2014 WL 4377931, at *6, those declarations are probative on the issue. Moreover, there is no rule that declarations in support of a motion for conditional certification may be filed only by members of the putative collective. Ms. Manrique was a general manager during the relevant time period, and thus is not a potential collective member (as she recognizes in her declaration ECF No. 36-11, ¶ 15]), however, Defendant does not object to her declaration on that account. And courts do rely on declarations from individuals who cannot be part of the collective when deciding conditional certification motions. *See, e.g.*, *Lujan v. Cabana Mgmt.*, No. 10-CV-755, 2011 WL 317984, at *5 (E.D.N.Y. Feb. 1, 2011) (relying on affidavits from employees whose claims would be time-barred).

Aug. 16, 2016) ("Here, the evidence establishes that [store managers] from seven different states performed similar non-managerial duties for a majority of the time they spent working, worked more than forty hours per week, and did not receive overtime compensation."); *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15-CV-10447, 2016 WL 1043429, at *4 (N.D. Ill. Mar. 16, 2016) ("[F]ive former [assistant branch managers] spanning five different PNC branches and states state that they, and other [assistant branch managers] across the nation, regularly worked more than forty hours a week, performed similar non-exempt work, and were not compensated appropriately.   These declarations not only support that [assistant branch managers'] duties and expectations are uniform, but also that they allegedly 'were victims of a common policy or plan that violated' the FLSA."  (quoting *Creal v. Group O, Inc.*, 155 F. Supp. 3d 831, 837 (N.D. Ill. 2016))); *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 771–72 (N.D. Ohio 2015) (conditionally certifying nationwide collective based on five declarations from three states and similar job postings); *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 100–01 (E.D.N.Y. 2014) (conditionally certifying nationwide collective and relying on affidavits from assistant store managers "who worked in various branches throughout seven states" as well as "starkly similar" job postings from various states).

Defendant makes a number of arguments directed at undermining this conclusion.   None of them succeed, because each would require the Court to pass on issues that are premature at this stage.   For example, Defendant presents evidence designed to undermine the credibility of Plaintiffs' declarants.   ECF No. 38 at 23–26.   But making credibility determinations is inappropriate when considering a motion for conditional certification.   *See, e.g.*, *Waggoner*. 110 F. Supp. 3d at 769 ("[T]he weight to be given to any declaration that is contradicted by subsequent deposition testimony is a matter best reserved for the second stage of the proceedings."); *Butler v.*

*DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 571 (D. Md. 2012) ("[E]ven if purported discrepancies did cast some doubt on [the two declarants'] credibility, the court would not deny conditional certification on that basis alone because 'credibility determinations are usually inappropriate for the question of conditional certification.'" (quoting *Essame v. SSC Laurel Operating Co. LLC*, 847 F. Supp. 2d 821, 825 (D. Md. 2012))); *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 384 (E.D.N.Y. 2010) ("At the initial assessment stage, before discovery is completed, the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations." (quoting *Francis v. A & E Stores, Inc.*, No. 06 Civ. 1638, 2008 WL 2588851 at *1–2 (S.D.N.Y. June 26, 2008))).

Defendant also presents various merits-based arguments. For example, it contends that the duties of assistant managers differed depending on the restaurant at which they worked. ECF No. 38 at 18–23. However, "at this early juncture, the burden upon [P]laintiffs is extremely low, and . . . issues [of the actual job duties of potential collective members] need not be conclusively resolved." *Puglisi*, 998 F. Supp. 2d at 101. Rather, as Plaintiffs have sufficiently (if barely) shown that they were subject to a common *de facto* policy that deprived them of overtime pay, "whether variance of job duties precludes collective treatment is more appropriately analyzed at the decertification stage." *Taveras v. D&J Real Estate Mgmt. II, LLC*, 324 F.R.D. 39, 45 (S.D.N.Y. 2018) (citing *Romero v. H.B. Auto. Grp., Inc.*, No. 11-cv-386, 2012 WL 1514810, at *8 (S.D.N.Y. May 1, 2012)); *see also Friscia*, 2018 WL 3122330, at *8 ("[T]he Court declines to consider the fourteen declarations Panera submitted to show individual differences among the assistant managers' actual duties. As another court in this District explained, 'this inquiry necessarily addresses the merits of Plaintiff[s'] claim and is therefore premature.'" (quoting *Goodman v. Burlington Coat Factory*, Civil Action No. 11-4395, 2012 WL 5944000, at *6 (D.N.J. Nov. 20,

2012))); *Giegerich v. Watershed, LLC*, Civil No. CCB-15-1728, 2016 WL 1169948, at *2, 4 (D. Md. Mar. 24, 2016) (issues such as "differing job titles, responsibilities, rates of pay, and work schedules" are "insufficient to defeat [conditional] certification at [the first] stage of the process"); *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 570 (D. Md. 2012) ("[Defendants] specifically highlight differences in the time periods these three individuals worked as technicians, the manner in which they recorded time on their timesheets, and the amount of time and type of tasks they performed 'off the clock.'  This argument, however, 'delves too deeply into the merits of the dispute' at this initial notice stage." (internal citation to record omitted) (quoting *Essame*, 847 F.Supp.2d at 826)); *McKinney v. United Stor-All Centers, Inc.*, 585 F. Supp. 2d 6, 10 (D.D.C. 2008) ("[T]he defendants' argument that determining whether the potential plaintiffs are similarly situated requires a highly individualized and fact-intensive analysis is more appropriately addressed at the second stage of the certification process.  Again, the plaintiff's burden is light at this early stage of the proceedings." (internal citation omitted)).  That is, "[t]o the extent Defendant[] argue[s] lack of uniformity, that is not the standard." *Ayala*, 12 F. Supp. 3d at 171.

Defendant's argument that the Department of Labor has "conducted audits of multiple cafés within the scope of the proposed collective" and found no violations is also unavailing.  ECF No. 38 at 26–27.  Again, such arguments go to the merits of Plaintiffs' claims and do not "negate [Plaintiffs'] modest factual showing of common unlawful policies." *Jackson v. Falcon Data Com, Inc.*, No. 09-CV-3990, 2011 WL 2837488, at *3, 5 (E.D.N.Y. July 18, 2011); *see also, e.g.*, *Gordon v. TBC Retail Grp.*, 134 F. Supp. 3d 1027, 1037 (D.S.C. 2015) (finding argument against conditional certification based on Department of Labor investigation that found no FLSA violations "premature at this stage").

Finally, noting that in 2016 Defendant sent arbitration agreements to all restaurant employees who then worked for the company (except those in California), which required employees to "use binding arbitration, instead of going to court" for wage and hour claims, Defendant argues that granting conditional certification would not be efficient because "the record shows that collective litigation would devolve into a series of mini-trials on enforcement of arbitration agreements and on whether each remaining plaintiff's duties satisfy an FLSA exemption." ECF No. 38 at 34–35; ECF 38-2 at 15. But courts have generally found that the existence of an arbitration agreement is irrelevant to conditional certification of a collective action, because the enforceability of such agreements is a merits-based determination better dealt with at the decertification stage. *See, e.g.*, *Friscia*, 2018 WL 3122330, at *8 ("Panera also argues that approximately half the proposed collective is covered by binding arbitration agreements . . . . This argument is inappropriate at the notice stage, however, because it goes to Panera's merits defenses." (internal record citation omitted)); *see also Ansoralli v. CVS Pharmacy, Inc.*, No. 16-CV-1506, 2017 WL 570767, at *2 n.3 (E.D.N.Y. Feb. 13, 2017) ("[Defendant's] arguments regarding timeliness, preclusive effect of arbitration agreements, and the *de minimis* exception to the FLSA are irrelevant. These are issues to be raised in the decertification phase, after discovery has been completed."); *Gordon*, 134 F. Supp. 3d at 1039 n.9 ("[Defendant] . . . assert[s] that there are very few potential class members who could join the litigation, due to the fact that '[its] employees started to sign mandatory arbitration agreements in October 2013.' The court does not find this consideration compelling, as it prematurely assumes that such arbitration agreements are enforceable. Instead, the court finds that the better approach is to address arbitration issues after conditional certification, when the scope and substance of those issues become clearer."); *Romero v. La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 647 (S.D.N.Y. 2013) ("[C]ourts have

consistently held that the existence of arbitration agreements is 'irrelevant' to collective action approval 'because it raises a merits-based determination.'" (quoting *D'Antuono v. C & G of Groton, Inc.*, No. 11–0033, 2011 WL 5878045, at *4 (D. Conn. Nov. 23, 2011) (collecting cases)); *Sylvester v. Wintrust Fin. Corp.*, No. 12 C 01899, 2013 WL 5433593, at *9 (N.D. Ill. Sept. 30, 2013) (refusing to consider at conditional certification stage the effect of arbitration clauses because "the enforceability of arbitration clauses are dealt with on a case-by-case basis. Without being presented with the circumstances surrounding the manner of formation of an actual agreement, [the Court] will not prejudge the enforceability of . . . arbitration clauses").[10]  Similarly, issues of the applicability of an FLSA exemption are also premature.  *See, e.g.*, *Waggoner*, 110 F. Supp. 3d at 772 ("Courts considering whether an exemption applies typically do so . . . after some discovery on the issue." (quoting *Killion v. KeHE Distrib.*, Nos. 3:12 CV 470, 3:12 CV 1585, 2012 WL 5385190, at *4 (N.D. Ohio Oct. 31, 2012)); *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 359 (W.D. Wis. 2014) (rejecting argument that collective should not be conditionally certified because of existence of individual defenses to merits of claim); *Pippins v. KPMG LLP*, No. 11 Civ. 0377, 2012 WL 19379, at *4 (S.D.N.Y. Jan. 3, 2012) ("The applicability of [any] affirmative defenses are not at issue on this motion, however; the only issue presently before the Court is whether Plaintiffs have made the preliminary showing to have their entitlement to overtime, and the applicability of these exemptions, litigated as a 'collective action.'"); *Indergit*, 2010 WL 2465488, at *9 (rejecting argument that conditional certification was inappropriate because determining the applicability of an exemption would require a "fact-intensive inquiry"

---

[10] Defendant argues that the Supreme Court's recent decision in *Epic Systems Corp. v. Lewis*, __ U.S. __, 138 S. Ct. 1612 (2018) that arbitration clauses waiving collective action rights are not *per se* unenforceable has "shifted considerably" the "legal landscape in which the motion [for conditional certification] must be considered.  ECF No. 38 at 7.  However, the decision in *Epic Systems* recognized that agreements to arbitrate are subject to generally applicable contract defenses. __ U.S. at __, 138 S. Ct. at 1622.  The cases cited above refuse to consider arbitration agreements at the conditional certification stage because their enforceability must be determined on a case-by-case basis.  *Epic Systems* does not change that.

and noting, "If this Court were to credit [that] argument, no FLSA action that is premised upon an alleged misclassification under the executive exemption could be resolved through the collective action process, thereby defeating the stated purpose of the FLSA and wasting judicial resources by requiring courts to consider each individual plaintiff's claims in a separate lawsuit").[11]   In short, "[a]lthough defendants often argue that the necessity of fact-intensive individualized inquiries will render a collective action unmanageable," courts tend "not to consider such arguments at the conditional certification stage, and, instead, put these issues off until the decertification stage, when discovery is complete."  *Barry v. S.E.B. Serv. of New York, Inc.*, No. 11-CV-5089, 2013 WL 6150718, at *6 (E.D.N.Y. Nov. 22, 2013).

Therefore, the Court shall conditionally certify a collective pursuant to the FLSA.

### C.      Conditional Certification of DCMWA Collective

Prior to February 27, 2015, the DCMWA provided for opt-in collective actions only.  *See Vasquez v. Grunley Constr. Co.*, No. 15-cv-2106 (GMH), 2016 WL 1559131, at *4 (D.D.C. Apr. 18, 2016).  Since the 2015 amendment and a later 2017 amendment, *see Stephens*, 291 F. Supp. 3d at 106 n.9, an action under the DCMWA "may be maintained by one or more employees, who may designate an agent or representative to maintain an action for themselves, or on behalf of all employees similarly situated" in a variety of ways, including "[i]nitially as a collective action pursuant to the procedures of the Fair Labor Standards Act . . . and subsequently as a class action." D.C. Code § 32-1308(a)(1)(C) (internal citation omitted).  That is, DCMWA claims may be brought in three ways: (1) "[c]onsistent with the [opt-in] collective action procedures of the Fair

---

[11] The Supreme Court's recent statement "reject[ing] the principle" that "exemptions to the FLSA should be construed narrowly," *Encino Motorcars, LLC v. Navarro*, __ U.S. __, __, 138 S. Ct. 1134, 1142 (2018), is not relevant here, notwithstanding Defendant's efforts to make it so.  ECF No. 38 at 7–8.  The issue is not the breadth of the construction of FLSA exemptions, but rather, whether defenses based on such exemptions are cognizable at this stage of the proceedings.

Labor Standards Act," (2) "in an opt-out class action," or (3) "in a[n] [opt-in] collective action that is subsequently converted into a[n] [opt-out] class action." *Stephens*, 291 F. Supp. 3d at 106 (quoting D.C. Code § 32-1308(a)(1)). Here, Plaintiffs seek conditional certification of an opt-in collective of assistant managers classified as exempt, who worked more than 40 hours per week for Defendant in Washington, D.C., from March 25, 2014, through February 27, 2015, when the DCMWA was amended to allow class actions; they plan to file a motion for class certification for the later time period pursuant to Rule 23 of the Federal Rules of Civil Procedure after the close of discovery. ECF No. 36-1 at 20 n.8.

The DCMWA defines "similarly situated employees" as those who "[a]re or were employed by the same employer . . . at some point during the applicable statute of limitations period," who "[a]llege one or more violations that raise similar questions as to liability," and who "seek similar forms of relief." D.C. Code § 32-1308(a)(2). At least one court in this District has recently treated the standards for certification under the FLSA and the DCMWA as similar. *See Stephens*, 291 F. Supp. 3d at 106 & n.10. Here, as in *Stephens*, because "neither party has suggested that conditional certification should be decided differently under the FLSA and D.C. law, the Court assumes for the purposes of this decision that there is no material difference between them." *Id.* at 106. Therefore, the Court conditionally certifies a collective under the DCMWA for the reasons discussed in Section II.B, *supra*.

### D.     Proposed Notice Period

Defendant challenges the proposed FLSA notice period, which Plaintiff begins on March 25, 2014, based on the FLSA's three-year statute of limitations for willful violations plus an

additional 249 days during which a tolling agreement was purportedly in place.[12]   ECF No. 36-1

at 12 n.3, 28; ECF No. 38 at 12–13.   Plaintiffs calculate the notice period by taking the date on

which they filed the original complaint in this action—November 29, 2017—and subtracting three

years from that date to account for the three-year statute of limitations for willful violations of the

FLSA, 29 U.S.C. § 255(a).   ECF No. 36-1 at 12 n.3.   That results in a date of November 29, 2014.

Plaintiffs then subtract from that date 249 days during which they assert a tolling agreement was

in place—June 1, 2016, the date the tolling agreement was executed, to February 5, 2017, ten days

after Defendant gave notice of termination of that agreement—to arrive at March 25, 2014.   *Id.*

Defendant does not claim that the calculation is inaccurate.   However, it asserts that the

calculation relies on "multiple dubious assumptions," including (1) that the Amended Complaint

relates back to the filing of the original complaint and that the three-year statute of limitations

applies; (2) that the timeliness of a collective action member's claim is based on the date she

consents to join the collective rather than the date of the filing of the complaint; and (3) that the

tolling agreement is ambiguous on its face and "does not operate to extend the FLSA's statute of

limitations in the manner Plaintiffs claim."   ECF No. 38 at 12–13 & nn.7–8.

As to the relation back issue, Rule 15(c) of the Federal Rules of Civil Procedure states that

an amendment to a pleading relates back to the date of the original pleading when, in relevant part,

"the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out

. . . in the original pleading," and, if the amendment changes the "party or the naming of the party

against whom a claim is asserted," the party to be brought in received timely notice of the action

and "knew or should have known that the action would have been brought against it, but for a

---

[12] Plaintiffs also request a DCMWA notice period beginning on March 25, 2014.   ECF No. 36-1 at 28.   The DCMWA has a three-year statute of limitations, whether the violation is willful or not.   D.C. Code § 32-1308(c)(1).   The discussion below (other than the section concerning willfulness) applies to DCMWA claims as well as FLSA claims.

mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(B), (C).  Defendant

makes no argument that these requirements are not met here.  Indeed, the Amended Complaint

contains factual allegations nearly identical to those in the original complaint as well as an

allegation that Panera received notice of the claim on the day it was filed and knew or should have

known it was the intended defendant.  ECF No. 29, ¶ 38.  The undersigned will therefore assume,

for the purposes of determining the notification period, that the Amended Complaint relates back

to the date of the filing of the original complaint.  Further challenge based on relation back can be

addressed, if necessary, in connection with any future motion for decertification.

The Amended Complaint also contains allegations supporting an inference that Defendant

willfully violated the FLSA.  It asserts that Defendant controlled, oversaw, and directed the duties

of potential collective members, including by assigning or being aware of the non-exempt duties

that they were regularly performing, and that Defendant was or should have been aware that federal

law required it to pay an overtime premium for hours worked in excess of 40 per week to

employees performing those duties.  *Id.*, ¶¶ 34, 44–45.  It further alleges that Defendant's failure

to pay overtime to potential class members, its misclassification of assistant managers as exempt

from the overtime provisions of the FLSA, and its failure to record employees' time worked, were

"intentional[], willful[], and repeated[]."  *Id.*, ¶ 44.  These allegations "are sufficient to give rise to

a plausible inference that [Defendant] knew that it was required to pay overtime wages under the

FLSA but failed to do so."  *Galloway v. Chugach Gov't Servs.*, 199 F. Supp. 3d 145, 153 (D.D.C.

2016) (emphasis omitted).  And, even "[w]hen willfulness is disputed, courts typically apply the

three-year limitations period in defining the scope of a collective action."  *Bittencourt*, 310 F.R.D.

at 116.

Similarly, although Defendant is correct that the statute of limitations on a potential opt-in plaintiff's FLSA claims does not stop running when a collective action complaint is filed but only when that individual opts in to the collective, "because equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, 'with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'" *Id.* at 116–17 (quoting *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013)); *see also Castillo*, 517 F. Supp. 2d at 449 ("[I]t makes administrative sense to set a firm date for the notice period, and three years prior to the filing of the Complaint . . . is an appropriate date."); *Hunter v. Sprint Corp.*, 346 F. Supp. 2d 113, 120 n.4 (D.D.C. 2004) (approving start date for class period of three years before the filing of the complaint).

Finally, Defendant contends that the tolling agreement, which was executed on June 1, 2016, is at best ambiguous and at worst void *ab initio* for lack of a meeting of the minds. ECF No. 38 at 6 & n.7. The agreement between Defendant and two Panera assistant managers states that it tolls the statute of limitations "on any claim under the FLSA or any state wage and hour law" (other than claims from California assistant managers) such that the limitations period "will not run against Plaintiffs" (identified as David Cornelius and Steve Willms) "or Potential Plaintiffs" (identified as "all Assistant Managers, however variously titled, who work at any corporate-owned Panera store"). ECF No. 36-14 at 2. The agreement further states that "[n]either party shall put forward or rely upon the period of time that this Agreement is or was in effect as a bar or laches or for any other purpose to defeat the claims made or to be made in the [contemplated lawsuit] on the basis that the claims made or to be made are untimely." *Id.* Defendant points to the provision governing the duration of the agreement, which states that the agreement "is effective as of the

date a copy of [it], executed on behalf of Plaintiffs, is provided to Panera's counsel, and shall

terminate ten (10) days after Panera or Plaintiffs give written notice of cancellation to the other."

*Id.* Defendant argues that the agreement is ambiguous "regarding whether, if at all, tolling applies

to claims asserted some ten months or more after the agreement's termination." ECF No. 38 at 12

n.7.

Defendant again presents a bare-bones argument that need not be decided at this stage of

the litigation. Plaintiff relies on the tolling agreement to support its request that the notification

period be extended for the length of time the agreement was in effect, that is, 249 days, and its

interpretation of the agreement's meaning is quite plausible.[13]  Moreover, Defendant's arguments,

if credited, would likely require the Court to take evidence to determine whether an agreement

existed and, if so, what it meant. However, at the conditional certification stage, courts should

"refrain from resolving factual disputes and deciding matters going to the merits." *Stephens*, 291

F. Supp. 3d at 105. The Court therefore finds, at this preliminary stage, that the tolling agreement

should be interpreted to extend the notice period by 249 days—the number of days that it was in

effect—to March 25, 2014. Any challenges to this finding based on the agreement's ambiguity or

other defenses, may be raised in connection with a motion for decertification.

---

[13] Indeed, Plaintiffs' interpretation is more plausible than Defendant's. The tolling agreement, read as a whole, appears to be a clear exchange of promises. Defendant agreed to toll the statute of limitations for the period that the agreement was in force and not to rely on that period to try to defeat as untimely any claims Plaintiffs might bring. ECF No. 36-14 at 2. Plaintiffs agreed not to sue during the period the agreement was in force: "[d]uring the term of this Agreement, Plaintiffs shall refrain and forbear from commencing, instituting, or prosecuting any lawsuit, arbitration, action, or other proceedings against Panera raising FLSA or state wage and hour claims." *Id.* at 3. To the extent that Defendant proposes that the agreement meant that "the toll of the statute would be ineffective unless [Plaintiffs] sued before" the agreement terminated, that "proposed construction would be nonsensical" because the obvious purpose of "[D]efendant's agreement to toll was [Plaintiffs'] agreement not to sue." *Ramirez v. CSJ & Co.*, No. 06 CIV. 13677, 2007 WL 1040363, at *2 (S.D.N.Y. Apr. 3, 2007). That is, Plaintiffs could not sue while the agreement was in place, which "is what lawyers commonly understand to be the meaning of tolling agreements." *Id.* To the extent that Defendant suggests that its promise not to "rely upon the period of time that [the agreement] is or was in effect . . . to defeat the claims . . . on the basis that the claims . . . are untimely" (ECF No. 36-14 at 2) expired after a certain amount of time, there appears to be nothing in the agreement to support such an interpretation.

As to the end of the notice period, Plaintiffs ask that the DCMWA notice period end on February 27, 2015 (ECF No. 36-1 at 28)—the date that the statute was amended to allow litigation to proceed as a class action—and Defendant does not object.  Regarding the FLSA notice period, however, Defendant represents that it reclassified assistant managers as non-exempt over the course of two and one-half months in the Fall of 2016, and that the reclassification was complete on November 16, 2016.  ECF No. 36-12, ¶ 5.  It asserts, therefore, that November 16, 2016, is "the last possible date on which any person could have worked as a salaried-exempt employee in that role."  ECF No. 38 at 15.  Plaintiffs point out that, as discovery has not commenced in this case, they have not been able to test that statement.  ECF No. 36-1 at 12.  Therefore, the FLSA notice period should end, as Plaintiffs request, on the date of this Memorandum Opinion and Order granting their motion for conditional certification issues.  ECF No. 36-1 at 28.

In sum, notice of the pendency of this FLSA action shall be sent to employees who worked at Panera restaurants operated by Defendant nationwide (with the exception of New York, New Jersey, California, and Massachusetts) as assistant managers beginning on March 25, 2014—which, as explained above is three years plus 249 days prior to the filing of this action—and the date of this opinion.  Notice of the pendency of the DCMWA action shall be sent to employees who worked at Panera restaurants operated by Defendant in the District of Columbia as assistant managers between March 25, 2014, and February 27, 2015.  *See, e.g.*, *Stephens*, 291 F. Supp. 3d at 105 ("District courts enjoy 'considerable discretion' to decide whether and how collective actions should proceed and to fashion procedures for 'joining similarly situated employees in a manner that is both orderly and sensible.'" (quoting *Galloway v. Chugach Gov't Servs., Inc.*, 263 F. Supp. 3d 151, 155 (D.D.C. 2017))).

E.      Notice

Plaintiffs request that Defendant provide certain information to facilitate notice to the collective and that the Court authorize particular methods of distribution of notice, set a 60-day opt-in period, and approve the form and content of its proposed notices and content-to-sue forms. Defendant opposes the bulk of the requests.[14]

1.      Information Sought by Plaintiffs

Plaintiffs seek from Defendant "a computer-readable list of the names, last known mailing addresses, last known telephone numbers, last known email addresses, dates of work, and locations" for all potential members of the FLSA and DCMWA collectives, as well as the social security numbers for any potential members of the collectives "whose notices are returned undeliverable."  ECF No. 36-1 at 30.  Defendant asserts that they should be ordered to produce only "names and last known home addresses" and that the request for email addresses and phone numbers should be denied.[15]  ECF No. 38 at 50.

---

[14] The majority of Defendant's arguments regarding notice, including the manner of providing notice and the content of the notice, is included in a fifteen-page brief (submitted as an addendum to its 44-page merits brief) for which Defendant failed to seek permission to file.  ECF No. 38-1.  Plaintiffs ask that the brief be stricken as violative of the 45 page-limit for opposition briefs contained in Local Civil Rule 7(e).  ECF No. 38 at 31–32.  Defendant argues that the brief was necessary because Plaintiffs "attached multiple pages of proposed notices and related documents to their [motion for conditional certification], and those submissions presented multiple additional issues to which Panera has a right to respond."  ECF No. 38 at 49 n.39.  Defendant's argument is not well-taken for two reasons.  First, if Defendant required additional pages, it should have sought leave of court pursuant to the Local Rules.  *See* LCvR 7(e) (allowing additional pages with "prior approval of the Court").  Second, a number of Plaintiffs' arguments that Defendant responds to in its supplemental brief were not raised in any attachments to Plaintiffs merits brief, but rather are included in the brief itself.  Yet Defendant chose to address them fully in an unauthorized supplemental filing.

Nevertheless, the undersigned will not strike the excess pages, but will consider them to the extent they are helpful in resolving the issues presented.  Defendant is warned, however, that it must strictly follow both the Federal Rules of Civil Procedure and the Local Civil Rules in future submissions.

[15] Defendant appears to take no position on providing dates of work and employment locations (ECF No. 38 at 49–50), which the Court takes as a concession.  *See, e.g.*, *Cooper v. Farmers New Century Ins. Co.*, 607 F. Supp. 2d 175, 180 (D.D.C. 2009).  Moreover, there does not appear to be anything objectionable about production of such information.  *See, e.g.*, *Blount v. U.S. Sec. Assocs.*, 945 F. Supp. 2d 88, 97 (D.D.C. 2013) ("The Court sees no reason why the potential class members' dates of employment should not be disclosed to plaintiffs and will order that information produced . . . ."); *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 75 (E.D.N.Y. 2016) (ordering defendant to

Defendant argues that notice by mail is sufficient and objects to production of email addresses and telephone numbers because providing notice by email presents a "risk of contamination and unauthorized distribution" and notice provided via text message is unnecessarily intrusive.  ECF No. 38-1 at 10–12.  Following the recent decision in *Stephens*, "the Court agrees with Plaintiffs that some form of electronic notice is justified in this case."  291 F. Supp. 3d at 122.  Defendant's concerns that emails might be forwarded and "compromise the integrity of the notice process," *id.* at 10–11 (quoting *Reab v. Electronic Arts*, 214 F.R.D. 623, 630 (D. Colo. 2002)), seems overblown; indeed, some courts authorize notice by publication, *see, e.g.*, *Dilonez v. Fox Linen Serv. Inc.*, 35 F. Supp. 3d 247, 256 (E.D.N.Y. 2014) (authorizing notice in "local Spanish periodicals").  However, the Court is concerned that, "even in the social-media era, unsolicited phone calls and text messages remain a significant intrusion of individuals' privacy." *Stephens*, 291 F. Supp. 3d at 122.  Therefore, Defendant shall produce only the last known email addresses in its possession of potential collective members.

The Court is even more concerned about ordering Defendant to provide Plaintiffs with potential collective members' social security numbers, which Defendant is understandably reticent to do.  ECF No. 38-1 at 15.  Courts are "cautious when it comes to social security numbers, which implicate serious privacy concerns."  *Eley v. Stadium Grp., LLC*, No. 14-cv-1594 (KBJ), 2015 WL 5611331, at *3 (D.D.C. Sept. 22, 2015).  Here, as in *Eley*, "Plaintiffs have not explained any particular need for the potential plaintiffs' social security numbers."  *Id.*  Accordingly, the request for production of social security numbers is denied at this time.  In the event that Plaintiffs can show that methods of direct communication are unsuccessful and the parties are not able to agree on less intrusive means of handling any such issues if they should arise, they may seek permission

---

produce, among other information, "locations and dates of employment for all potential class members who worked for [defendant] for the relevant time period").

from the Court to require production of more personal information.  *See, e.g.. Eley*, 2015 WL 5611331, at *3.

       2.      Methods of Distribution and Opting-In

As should be obvious from the discussion above, the undersigned will order distribution of notice via first-class mail and email.  Plaintiff also seeks an order requiring Defendant to include notice in current assistant managers' pay envelopes and authorization to create a stand-alone website through which putative collective members could opt-in to the action by submitting their forms electronically.  ECF No. 36-1 at 32–33.

Distribution in pay envelopes has been denied on the basis that "this form of notice 'could imply Defendants' endorsement of the Notice or lead to situations in which Defendants were the ones answering questions about the Notice or lawsuit.'"  *Stephens*, 291 F. Supp. 3d at 122 (quoting *Ayala*, 12 F. Supp. 3d at 173).  Those are appropriate concerns, and this request is denied.

Plaintiffs also seek to "create [a] standalone website through which opt-ins can electronically submit their claim forms."  ECF No. 36-1 at 32.  In response, Defendant questions "whether and how any such website would provide information to recipients beyond [any] court-approved notice[,] . . . how access would be limited to members of the putative collective," and how the website would be administered.  ECF No. 38-1 at 13.  Plaintiffs fail to respond to these concerns.  Therefore, at this time, when there is no indication that more traditional opt-in procedures will be insufficient, the request is denied.

       3.      Opt-In Period and Reminder Notices

Plaintiffs seek a 60-day period after notice has been sent for potential collective members to send in their consent-to-sue forms, and asks permission to mail and email them a reminder notice

30 days into the opt-in period.[16]  ECF No. 36-1 at 33–34.  Defendant wants a 30-day opt-in period and no reminder notice.

As in *Stephens,* the Court agrees with Plaintiffs that thirty days is "unreasonably short," and that the opt-in period in this case should be 60 days.  291 F. Supp. 3d at 122; *see also Ayala*, 12 F. Supp. 3d at 173 (finding a 60-day opt-in period sufficient for a "fairly straightforward" case); *cf. Mark v. Gawker Media LLC*, No. 13–CV–4347, 2014 WL 5557489, at *1 (S.D.N.Y. Nov. 3, 2014); ("[C]ourts in [the Southern District of New York] have coalesced around a standard 60-day notice period." (collecting cases)); *Aboud v. City of Wildwood*, Civil No. 12-7195, 2013 WL 2156248, at *8 (D.N.J. May 17, 2013) (calling 30 days "too short a period" for opt-ins).

As to the reminder notice, Defendant argues that it might communicate the Court's "encouragement to join the suit or approval of its merits."  ECF No. 38-1 at 14.   "[T]here is no general consensus among district courts . . . as to the propriety of sending reminder notices.  Some courts deny requests to send reminder notices on the grounds that 'the reminder is unnecessary and potentially could be interpreted as encouragement by the court to join the lawsuit.'"  *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 357 (E.D.N.Y. 2012) (quoting *Witteman v. Wisconsin Bell, Inc.*, No. 09-CV-440, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010)).  Here, however, any reminder notice will be sent by Plaintiffs' counsel or by a third-party administrator.  Moreover, any reminder notice can "include[] language indicating that the Court does not encourage or discourage participation in the collective action."  *Agerbrink v. Model Serv. LLC*, No. 14 Civ. 7841, 2016 WL 406385, at *8 (S.D.N.Y. Feb. 2, 2016) (citing *Jennings v. Cellco Partnership*, Civ. No. 12-293, 2012 WL 2568146, at *6 (D. Minn. July 2, 2012)).  "In light of the salutary purpose of notice in collective actions," *id.*, Plaintiffs are authorized to send a reminder

---

[16] As the undersigned has already denied Plaintiffs' request to send notice via text message, that method of delivery is not addressed in this discussion.

notice via first class mail and email to potential collective members 30 days after the beginning of the opt-in period.

### 4. Proposed Notice and Consent-to-Sue Forms

Defendant presents a litany of objections to Plaintiffs' proposed notice and consent-to-sue forms. ECF No. 38 at 49–50; ECF No. 38-1 at 3–9. These run the gamut from suggesting that potential collective members plaintiffs be informed of the possibility that they could be liable for costs and could be referred to arbitration, to requesting elimination of perceived redundancies in the proposed notices, to targeting specific language in the proposed notices as misleading or confusing. In light of the sheer number of objections, Defendant's suggestion that, if the motion for conditional certification is granted, the parties should be directed to "work together to draft mutually agreeable documents" is well-taken. ECF No. 38-1 at 15. The parties shall meet and confer to decide on the form and content of the opt-in notice, reminder notice, and consent-to-sue forms, and submit those proposed documents to the Court within 14 days of the date of this decision. *See, e.g.*, *Galloway*, 263 F. Supp. 3d at 159 ("Without expressing its views on the merits of [the defendant's] objections, the Court agrees that these are issues that the parties should resolve in the first instance. The Court will therefore direct that the parties confer and jointly propose a notice to potential opt-in plaintiffs . . . which the parties shall submit within the next fourteen days." (footnote omitted)); *Blount*, 945 F. Supp. 2d at 98 ("As to the form of notice, the Court will give the parties a chance to develop a mutually agreed-upon notice but will not give them thirty days to do so. The parties will have fifteen days to submit a proposed notice on which they have agreed . . . ."). If the parties cannot agree, the parties shall submit a joint filing raising any disputes for resolution.

### III.   CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA and the DCMWA (ECF No. 36) is **GRANTED IN PART** and **DENIED IN PART** as discussed above.  It is further

**ORDERED** that the parties shall meet and confer to agree on the form and content of the opt-in notice, reminder notice, and consent-to-sue forms, and submit those proposed documents to the Court within 14 days of the date of this Memorandum Opinion and Order.  It is further

**ORDERED** that if the parties are unable to agree on the form and content of the noticed and consent to sue forms, within 14 days of the date of this Memorandum Opinion and Order, they shall submit a joint filing to the Court presenting each side's positions on the remaining disputes, which the undersigned will thereafter resolve expeditiously.

**SO ORDERED.**

Date:  October 16, 2018

_____

G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE