**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ALAN MEYER and DAVID CORNELIUS,
individually and on behalf of all others similarly
situated,

|  |  |
|---|---|
| Plaintiffs, | 1:17-CV-02565 (EGS)(GMH) |
| v. | |
| PANERA, LLC, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT,**
**SERVICE PAYMENTS, AND ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND......................................................... 2

    I.    Factual Allegations ................................................................................... 2

    II.    Overview of Investigation, Litigation, and Settlement Negotiations .................... 3

SUMMARY OF SETTLEMENT TERMS......................................................................... 5

    I.    The Settlement Fund ................................................................................ 5

    II.    Settlement-Eligible Employees.................................................................. 5

    III.    Claim Procedure..................................................................................... 5

    IV.    Release .................................................................................................. 6

    V.    Allocation Formula ................................................................................. 7

    VI.    Service Payments ................................................................................... 7

    VII.    Settlement Claims Administration .............................................................. 8

    VIII.    Attorneys' Fees and Litigation Costs ......................................................... 8

ARGUMENT ...................................................................................................................... 8

    I.    The Settlement Agreement Resolves a Bona Fide Dispute .................................. 9

    II.    The Settlement is Fair, Reasonable, and Adequate.............................................. 11

        A.    The Settlement Agreement is Not the Result of Overreach by the
            Defendant.................................................................................... 12

        B.    The Settlement Agreement is the Result of Arm's Length Negotiations
            by Represented Parties.................................................................. 13

        C.    Serious Impediments to Collection of Judgment ...................................... 14

    III.    The Attorneys' Fees Request is Fair ............................................................... 15

        A.    The Court Should Apply the Percentage-of-the-Fund Method................. 15

        B.    The Court Should Award Plaintiffs' Counsel One-Third of the Fund
            that Their Work Created ................................................................ 17

            i.    Size of the Fund and the Number of Persons Benefited
                (Factor 1)......................................................................... 18

        ii.      Skill and Efficiency of Plaintiffs' Counsel and Time Devoted to the Case (Factors 2 and 5) .......................................... 18

        iii.     Complexity and Duration of Litigation and Risk of Nonpayment (Factors 3 and 4) ...................................................... 19

        iv.     Awards in Similar Cases (Factor 6) ............................................. 20

        v.      A Lodestar Cross-Check Confirms the Attorneys' Fees are Reasonable ................................................................................. 21

IV.    Plaintiffs' Counsel is Entitled to Reimbursement of Expenses Under the Settlement Agreement. ............................................................................ 22

V.     The Requested Service Payments are Fair ......................................................... 23

CONCLUSION .............................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Abrego v. Yu Lin, Corp.,*
    317 F. Supp. 3d 298 (D.D.C. 2018) ..................................................................... 10

*Baan Co. Sec. Litig.,*
    288 F. Supp. 2d 14 (D.D.C. 2003) ........................................................... 16, 21, 22

*Barrentine v. Ark.-Best Freight Sys., Inc.,*
    450 U.S. 728 (1981) ............................................................................................ 19

*Beard v. District of Columbia Housing Authority,*
    584 F. Supp. 2d (D.D.C. 2008) ............................................................................. 9

*Bell v. Consumer Cellular, Inc.,*
    No. 15 Civ. 941, 2017 WL 2672073 (D. Or. June 21, 2017) .................................. 16

*Black Farmers Discrimination Litigation,*
    953 F. Supp. 2d 82 (D.D.C. 2013) ............................................................... *passim*

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ............................................................................................ 15

*Carrillo v. Dandan, Inc.,*
    51 F. Supp. 3d 124 (D.D.C. 2014) .............................................................. *passim*

*Cohen v. Chilcott,*
    522 F. Supp. 2d 105 (D.D.C. 2007) ............................................................... 18, 19

*Democratic Cent. Comm. of Dist. of Columbia v. Wash. Metro Area Transit Com'n,*
    3 F.3d 1568 (D.C. Cir. 1993) ............................................................................... 20

*Diaz v. Eastern Locating Service, Inc.,*
    No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) .......................... 13

*Eley v. Stadium Grp., LLC,*
    236 F. Supp. 3d 59 (D.D.C. 2017) ...................................................... 9, 12, 13, 14

*Ferreri v. Bask Tech., Inc.,*
    No. 15 Civ. 1899, 2016 WL 6833927 (S.D. Cal. Nov. 21, 2016) .......................... 16

*Frank v. Eastman Kodak Co.,*
    228 F.R.D. 174 (W.D.N.Y. 2005) .................................................................. 23, 25

*Friscia v. Panera Bread Co.,*
    No. 16 Civ. 03764 (D.N.J) ..................................................................................... 4

*Goldberger v. Integrated Resources, Inc.*,
   209 F.3d (2nd Cir. 2000)..................................................................... 21

*Guippone v. BH S&B Holdings, LLC*,
   No. 09 Civ. 1029, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ............................................. 24

*In re Medical X-Ray Film Antitrust Litig.*,
   1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)......................................................... 21

*Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003)......................................................... 22

*In re Vitamins Antitrust Litig.*,
   No. 99 Civ. 197, 2001 WL 34312839 (D.D.C. July 16, 2001)........................................... 19, 20

*Khait v. Whirlpool Corp.*,
   No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ............................................. 22

*Little v. Wash. Metro. Area Transit Auth.*,
   313 F. Supp. 3d (D.D.C. 2018) ............................................................ 15, 17, 22, 23

*Lliguichuzhca v. Cinema 60, LLC*,
   948 F. Supp. 2d 362 (S.D.N.Y. 2013)......................................................... 11, 13, 14

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
   No. 08 Civ. 1310, 2009 WL 3094955 (E.D. Va. Sept. 28, 2009)....................................... 11, 12

*Long v. HSBC USA INC.*,
   2016 WL 4764939 (S.D.N.Y. Sept. 13, 2016)...................................................... 14, 19

*Lorazepam & Clorazepate Antitrust Litig.*,
   2003 WL 22037741 (D.D.C. June 16, 2003)...................................................... 16, 21, 23, 25

*Lorazepam & Clorazepate Antitrust Litig.*,
   205 F.R.D. 369 (D.D.C. 2002)................................................................ 8

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) .............................................................. 9

*McLaughlin v. IDT Energy*,
   No. 14 Civ. 4107, 2018 WL 3642627 (E.D.N.Y. July 30, 2018) ............................................. 15

*Monzon v. 103W77 Partners, LLC*,
   No. 13 Civ. 5951, 2015 WL 993038 (S.D.N.Y. Mar. 5, 2015) ............................................. 16

*Morris v. Affinity Health Plan*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012)......................................................... 18

*Netzel v. West Shore Grp., Inc.*,
   No. 16 Civ. 2552, 2017 WL 1906955 (D. Minn. May 8, 2017) ......................................... 23, 24

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
   No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) .................................. 25

*Radosti v. Envision EMI, LLC*,
   760 F. Supp. 2d (D.D.C. 2011) ............................................................ 20

*Reyes v. Altamarea Grp., LLC*,
   No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ............................. 25

*Sarceno v. Choi*,
   78 F. Supp. 3d 446 (D.D.C. 2015) ................................................... *passim*

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) .................................................... 20

*Scovil v. FedEx Ground Package Sys., Inc.*,
   No. 10 Civ. 515, 2014 WL 1057079 (D. Me. Mar. 14, 2014) .................................. 17

*Sewell v. Bovis Lend Lease, Inc.*,
   No. 09 Civ. 6548 , 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) .............................. 17, 21, 24

*State of Ohio v. Bristol-Myers Squibb Co.*,
   No. 02 Civ. 01080, 2003 WL 21105104 (D.D.C. May 13, 2003) ............................. 8

*Swedish Hosp. Corp. v. Shalala*,
   1 F.3d 1261 (D.C. Cir. 1993) ......................................................... 15, 16, 21

*Taylor v. Progress Energy, Inc.*,
   493 F.3d 454 (4th Cir. 2007) ........................................................... 9

*Trombley v. Nat'l City Bank*,
   826 F. Supp. 2d 179 (D.D.C. 2011) ................................................ *passim*

*United States v. 110-118 Riverside Tenants Corp.*,
   886 F.2d 514 (2d Cir. 1989) .......................................................... 15

*Wells v. Allstate Ins. Co.*,
   557 F. Supp. 2d 1 (D.D.C. 2008) .................................................... *passim*

## Other Authorities

Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006) ............................................................................. 23

## INTRODUCTION

Subject to Court approval, Plaintiffs Alan Meyer and David Cornelius ("Plaintiffs") and Defendant Panera, LLC ("Defendant") (collectively, the "Parties") have agreed to resolve this Fair Labor Standards Act ("FLSA"), D.C. Minimum Wage Act ("DCMWA"), and D.C. Wage Payment and Collection Law ("DCWPCL") wage and hour lawsuit on a collective-wide basis for significant monetary relief, $1,990,000.00. The Parties executed a Settlement Agreement and Release ("Settlement Agreement") following a thorough pre-suit investigation, contested litigation, informal discovery, multiple mediation sessions, and extensive arm's length negotiations between experienced counsel.

The settlement satisfies the criteria for approval because it (1) resolves a bona fide dispute, and (2) considering the totality of the circumstances, constitutes a fair, reasonable, and adequate agreement. *See Carrillo v. Dandan, Inc.*, 51 F. Supp. 3d 124 (D.D.C. 2014) (setting out approval standard). Therefore, Plaintiffs respectfully request that the Court issue an order: (1) approving the settlement set forth in the Settlement Agreement, attached as Exhibit A to the Declaration of Sally J. Abrahamson in Support of Plaintiffs' Motion for Approval of Settlement, Service Payments, and Attorneys' Fees and Costs ("Abrahamson Decl.");[1] (2) approving the proposed Notice of Settlement and Opportunity to Join Collective Action ("Settlement Notice"), attached as Exhibit B, and directing its distribution; (3) approving Service Payments of $10,000 to each of the Plaintiffs and $5,000 to Opt-In Plaintiffs who have assisted in the litigation of this case; (4) approving Plaintiffs' request for one-third of the settlement fund for attorneys' fees,

---

[1]     Unless otherwise indicated, all Exhibits are attached to the Abrahamson Declaration and all capitalized terms have the definitions set forth in the Settlement Agreement.

plus reimbursement of costs and expenses; (5) approving the Claims Administrator's fees and costs; and (6) incorporating the terms of the Settlement Agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Factual Allegations

Plaintiffs are former employees of Defendant who worked as exempt-classified Assistant Managers ("AMs") in Defendant's Panera bakery-cafes in the District of Columbia and Alabama.  ECF No. 29 (Amended Complaint) ("Am. Compl.") ¶¶ 20, 26.  Defendant is a corporation that operates hundreds of bakery-cafes (or "restaurants") in 46 states and the District of Columbia.  *Id.* ¶ 3.  Plaintiffs allege that Defendant violated the FLSA, 29 U.S.C. §§ 201-219, the DCMWA, D.C. Code §§ 32-1001-15, the DCWPCL, D.C. Code §§ 32-1301-12, and supporting D.C. and U.S. Department of Labor regulations by improperly classifying them and other AMs as exempt from federal and state overtime requirements and failing to pay them overtime wages.  *Id.* ¶ 2.  Plaintiffs claim that they and other AMs predominantly performed non-managerial work related to customer service, cashiering, food preparing, and cleaning—and worked long hours without overtime pay.  *Id.* ¶ 5.  Defendant informed Plaintiffs that in anticipation of revisions to the FLSA's "white collar" exemptions that were to become effective on December 1, 2016, Defendant changed the classification of AMs across its operations in November 2016; and no AM has been classified as exempt while working for Defendant since then.  *Id.*  That said, Defendant has argued that if this case were determined on the merits, the evidence would establish that AMs performed duties and were paid in a manner that satisfied the test for those exemptions.  The Parties contested each other's position in the litigation.

2

## II.      Overview of Investigation, Litigation, and Settlement Negotiations

On May 5, 2016, Plaintiffs contacted Defendant inviting it to engage in pre-suit settlement discussions regarding Plaintiffs' and other AMs' overtime claims.  Abrahamson Decl. ¶ 12.  On June 1, 2016, the Parties executed a Tolling Agreement, which remained in effect until February 5, 2017.[2]  *Id.* ¶ 13.  The Parties agreed to participate in a pre-litigation mediation session and selected Hunter R. Hughes, an experienced employment law and class action mediator, to preside over their negotiations.  *Id.* ¶ 14.

In preparation for the mediation, the Parties engaged in an informal discovery exchange. *Id.* ¶ 15.  Defendant produced employment data relating to more than 3,000 AMs, which allowed Plaintiffs to calculate damages.  *Id.* ¶ 16.  Plaintiffs' Counsel analyzed this data and constructed a damages model.  *Id.* ¶ 17.  Before the mediation, the Parties submitted detailed mediation statements setting forth their respective positions as to liability and damages to the mediator.  *Id.* ¶ 18.  On November 17, 2017, the Parties attended the mediation but were unable to reach a settlement.  *Id.* ¶ 19.

Plaintiffs commenced this action on November 29, 2017 by filing a Class and Collective Action Complaint.  *See* ECF No. 1 (Complaint).  On January 30, 2018, Defendant moved to dismiss the Plaintiffs' complaint and Plaintiffs filed a motion to conditionally certify a collective action pursuant to the FLSA and DCMWA.  *See* ECF Nos. 10, 11.  While the Motion to Dismiss (ECF No. 10) and the Motion for Conditional Certification (ECF No. 11) were pending, on May 17, 2018, Plaintiffs filed an Amended Complaint, with the consent of Defendant, which remains

---

[2]      Prior to the Settlement, the Parties disputed the effect and enforceability of the Tolling Agreement.  A crucial term of the Parties' Settlement Agreement is that the Tolling Agreement will, to the extent it was enforceable at all, will become null and void in all respects, should the settlement be approved.

the operative pleading in this case.  ECF No. 29.  On May 21, 2018, the Court denied as moot

Defendant's Motion to Dismiss and Plaintiffs' Motion for Conditional Certification.  ECF

Minute Order May 21, 2018.

On May 24, 2018, Plaintiffs moved to toll the statute of limitations for other AMs' claims

between January 30, 2018—the date Plaintiffs filed their first Motion for Conditional

Certification—until the resolution of the motion for conditional certification.  ECF No. 31.  On

June 5, 2018, Defendant filed its Answer and Plaintiffs filed a renewed motion to conditionally

certify a collective under the FLSA.  *See* ECF Nos. 35, 36.

On July 16, 2018, Plaintiffs renewed their efforts to resolve their claims against

Defendant by attending a settlement conference in another AM overtime misclassification case

against Defendant in the District of New Jersey at the invitation of the Court.  Abrahamson Decl.

¶ 20; *see also Friscia v. Panera Bread Co.*, No. 16 Civ. 03764 (D.N.J).  The *Friscia* settlement

conference was also unsuccessful.  Abrahamson Decl. ¶ 21.

On October 16, 2018, the Court conditionally certified a nationwide collective of AMs

that worked for Defendant between March 24, 2014 and October 16, 2018, with the exception of

AMs who worked in New York, New Jersey, California, and Massachusetts.  ECF No. 45 at 25.

On that same day, the Court denied Plaintiffs' motion for equitable tolling.  ECF No. 44.  On

October 30 and 31, 2018, the Parties submitted separate proposals for the Court-Authorized

FLSA/DCMWA Notice and Reminder Notice, and a joint proposed Consent-to-Sue form.  *See*

ECF Nos. 46, 48.

Throughout the litigation and on a parallel track, the Parties' counsel continued their

settlement negotiations.  Abrahamson Decl. ¶ 22.  In fact, the Parties planned on attending

another mediation session along with the plaintiffs in the *Friscia* case before private mediator

Martin Scheinman on November 5, 2018.  Just prior to this mediation, however, the Parties reached an agreement in principle.  *Id.* ¶ 23.  Over the next several weeks, the Parties finalized the terms of the settlement and executed the Settlement Agreement on December 21, 2018.  *Id.* ¶ 24.

**SUMMARY OF SETTLEMENT TERMS**

## I.      The Settlement Fund

The Settlement Agreement establishes a Gross Settlement Amount of $1,990,000.00, from which individual settlement awards will be paid to AMs who participate in the settlement.  Ex. A (Settlement Agreement) § III(A)(1).  The Gross Settlement Amount also covers any Court-approved service payments, the third-party claims administrator's fees and costs, and any Court-approved attorneys' fees and expenses.  *Id.*  Defendant must pay the employer's share of payroll taxes on the settlement awards in addition to the Gross Settlement Amount.  *Id.*

## II.     Settlement-Eligible Employees

The employees eligible to participate in the settlement are salaried AMs who worked in states other than California, Massachusetts, and New Jersey at any time between March 27, 2016 through November 16, 2016 and did not opt in to the pending lawsuit in the U.S. District Court for the District of New Jersey, *Friscia v. Panera, LLC*, Case No. 2:16-cv-03754-ES-SCM (D.N.J.).  Ex. A (Settlement Agreement) § I(A)(2).  There are approximately 2,603 employees eligible to participate in the settlement.

## III.    Claim Procedure

If the Court approves the settlement, the Claims Administrator will mail the Settlement Notice to all Putative Claimants no more than 45 business days after the Court enters the Approval Order.  Ex. A (Settlement Agreement) § I(B)(2); Ex. B (Settlement Notice).  The

5

Settlement Notice will inform each Putative Claimant of the nature of the claims made, the terms of the Settlement, his or her individual Settlement Award, the scope of the release, and his or her right to participate or not participate in the settlement. *See* Ex. B (Settlement Notice). The Claims Administrator will take all reasonable steps to obtain the correct address of any Eligible Settlement Collective Member for whom the Settlement Notice is returned as undeliverable and will attempt re-mailings in the event better address information is obtained. Ex. A (Settlement Agreement) § I(B)(3).

The Claims Administrator will send a reminder postcard to any Putative Claimant who has not returned a Claim Form within 30 days after the initial mailing or subsequent re-mailing, reminding the Putative Claimant of the expiration of the Opt-In Period. *Id.* § I(B)(4); Ex. C (Reminder Postcard).

Putative Claimants can consent, agree, and opt in to the Litigation by submitting a properly executed Claim Form no later than 60 days after the date the Notice Packets are initially mailed to Putative Claimants. *See* Ex. A (Settlement Agreement) § I(C)(1).

## IV.    Release

All participating Claimants will release all wage and hour claims, demands, actions, and rights of any kind arising before and through the date the Court enters the Approval Order, that were brought in the Litigation, relating back to the full extent of the applicable statutes of limitations under the FLSA and under any other applicable federal, state, or local statute or common law theory giving rise to any such claim, through the date of entry of the Court's Approval Order

## V.      Allocation Formula

Putative Claimants' individual Settlement Awards will be calculated pursuant to an

allocation formula based on the number of weeks they worked during the relevant period.  *See*

Ex. A (Settlement Agreement) § III(B)(3).

Each Putative Claimant will be assigned one point for each of his or her Workweeks.  To

calculate the proportionate share of the Net Settlement Fund for each Putative Claimant, the

Claims Administrator will add all points for all Putative Claimants together to obtain the

"Denominator." *Id.*  The Claims Administrator will then divide the number of points for each

Putative Claimant by the Denominator to obtain each Putative Claimant's "Portion of the Net

Settlement Fund." *Id.*  The Claims Administrator will then multiply each Putative Claimant's

Portion of the Net Settlement Fund by the Net Settlement Fund to determine each Putative

Claimant's Settlement Award.

For tax purposes, 50 percent of the Settlement Award to a Putative Claimant will be

treated as back wages and 50 percent of such Settlement Award will be treated as non-wage

relief. *Id.* § III(C)(3).  Any portion of the Net Settlement Fund that remains unclaimed by

Putative Claimants who do not timely opt in or sign and cash their Settlement Checks within 120

days after the issuance of the Settlement Checks shall revert to Defendant.  *Id.* ¶ § III(C)(5).

## VI.     Service Payments

The Settlement Agreement provides that, subject to Court approval, Named Plaintiffs

Alan Meyer and David Cornelius will each receive a $10,000 Service Payment, and Opt-In

Plaintiffs Chelsea A. Romano, Michele L. Thomas, Elizabeth L. Tymus, Steven Willms, and

Joseph A. Whitfield who participated in the litigation will each receive a $5,000 Service

Payments in recognition of assistance rendered in obtaining the benefits of the settlement for the

collective, as well as the risks they took to do so, and in consideration of executing a general release. *Id.* § III(B)(2); *see* Abrahamson Decl. ¶ 46.[3]

## VII. Settlement Claims Administration

The Parties have retained Rust Consulting, a wage and hour claims administrator, to serve as the Claims Administrator. Abrahamson Decl. ¶ 25. Courts in this District have approved Rust Consulting as a Claims Administrator in class and collective actions. *See, e.g.*, *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 381-82 (D.D.C. 2002) (approving cost of notice plan and claim's administration by Rust Consulting); *State of Ohio v. Bristol-Myers Squibb Co.*, No. 02 Civ. 01080, 2003 WL 21105104, at *1, 3 (D.D.C. May 13, 2003) (preliminarily approving class action settlement involving Rust Consulting as claims administrator). Rust Consulting's fee, estimated to be approximately $37,000.00, will be paid from the Gross Settlement Amount. Ex. A (Settlement Agreement) § III(B)(2).

## VIII. Attorneys' Fees and Litigation Costs

Subject to Court approval, Plaintiffs' Counsel will receive $663,333.33 (one-third of the $1,990,000 settlement) as attorneys' fees, plus reimbursement of $13,981.59, which represents reasonable out-of-pocket costs and expenses incurred in litigation and resolving this matter. Ex. A (Settlement Agreement) § III(B)(2); Abrahamson Decl. ¶ 43.

## ARGUMENT

The D.C. Circuit has not affirmatively ruled that judicial approval is required of private FLSA settlements *ex ante*. *Sarceno v. Choi*, 78 F. Supp. 3d 446, 449 (D.D.C. 2015) ("No binding caselaw in this Circuit requires a district court to assess proposed FLSA settlements *ex*

---

[3]      In the Settlement Agreement, Named Plaintiffs are referred to as Represented Named Claimants and Opt-In Plaintiffs are referred to as Represented Opt-In Claimants.

*ante*.").  The lack of binding caselaw on the issue, as one District Court has noted, puts parties in

an "uncertain position."  *Id.*  Specifically, parties that privately settle FLSA claims and simply

move to dismiss the case pursuant to Rule 41 risk a later finding that the settlement agreement is

unenforceable.[4]  *Id.* at 450.  Thus, in an abundance of caution, parties litigating in this Circuit

still seek approval of FLSA settlements.  *See, e.g.*, *Eley v. Stadium Grp., LLC*, 236 F. Supp. 3d

59, 61 (D.D.C. 2017); *Sarceno*, 78 F. Supp. 3d at 449-50; *Carrillo*, 51 F. Supp. 3d at 131.

District Courts evaluate the fairness of private FLSA settlements by applying a two-factor

test that considers whether the proposed settlement (1) resolves a bona fide dispute; and (2) is

"fair, reasonable, and adequate, rather than merely a waiver of rights."  *Carrillo*, 51 F. Supp. 3d

at 132-33.  In assessing these factors, the Court must also "be mindful of the strong presumption

in favor of finding a settlement fair."  *Id.* at 133.  Each factor is addressed here in turn.

## I.      The Settlement Agreement Resolves a Bona Fide Dispute.

A settlement must "reflect[] a reasonable compromise over issues that are actually in

dispute."  *Carrillo*, 51 F. Supp. 3d at 132 (quoting *Velez v. Audio Excellence, Inc.*, No. 10 Civ.

1448, 2011 WL 4460110, at *1 (M.D. Fla. Sept. 21, 2011)); *see also, e.g.*, *Eley*, 236 F. Supp. 3d

at 63-64 (bona fide dispute regarding whether the plaintiffs were employees, the number of hours

plaintiffs worked, and whether the plaintiffs received minimum wage); *Sarceno*, 78 F. Supp. 3d

at 450 (bona fide dispute over, *inter alia*, the amount of wages owed the plaintiffs); *Carrillo*, 51

---

[4]      The FLSA does not expressly mandate judicial approval of private settlements.  *See generally* 29 U.S.C. §§ 201-219.  However, "[i]t is a long-held view that FLSA rights cannot be abridged or otherwise waived by contract because such private settlements would allow parties to circumvent the purposes of the statute by agreeing on sub-minimum wages."  *Beard v. District of Columbia Housing Authority,*, 584 F. Supp. 2d at 143 (D.D.C. 2008).  Accordingly, courts throughout the country have determined that judicial approval of private settlements resolving FLSA claims is essential in order to mitigate the "great inequalities in bargaining power between employers and employees."  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982); *see also Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007).

F. Supp. 3d at 133 (bona fide dispute with respect to the accuracy of the plaintiffs' time slips and whether travel between worksites was compensable).  This threshold inquiry is necessary to prevent a plaintiff from "merely waiving a right to wages owed," which is prohibited under the FLSA.  *Id.* (citing *D.A. Shulte, Inc. v. Gangi*, 328 U.S. 108, 115 (1946); *Brooklyn Sav. Bank v. O'Neill*, 324 U.S. 697, 707 (1945)); *see also Abrego v. Yu Lin, Corp.*, 317 F. Supp. 3d 298, 303 (D.D.C. 2018) (settlement agreement did not resolve a bona fide dispute and merely waived plaintiff's rights where the parties did not dispute the amount owed to the plaintiff, the number of hours he worked, or that he was eligible for overtime compensation).

Here, there is no doubt that a bona fide dispute exists.  Abrahamson Decl. ¶ 26; *see generally* Am. Compl; ECF No. 35 (Answer).  The Parties dispute nearly all aspects of the Plaintiffs' claims, including whether AMs employed by Defendant were properly classified as exempt from overtime laws.  Abrahamson Decl. ¶ 27.  Plaintiffs contend that their duties are primarily manual and customer-service related, and that they lack any real managerial authority.  Abrahamson Decl. ¶ 28; Am. Compl. ¶¶ 5, 69.  Defendant denies this allegation and contends that the evidence would establish ultimately that each AM that it classified as exempt performed duties and received compensation that would satisfy the tests for one or more FLSA exemption.  Abrahamson Decl. ¶ 28; Answer at 3.  The Parties also dispute the fact that Defendant's alleged violation of the FLSA was willful.  Abrahamson Decl. ¶ 29; Am. Compl. ¶ 79; Answer at 25.

Aside from the merits of the litigation, the Parties dispute whether Plaintiffs' conditionally certified collective action could be appropriately determined, ultimately, on a collective-wide basis.  In other words, the Parties dispute that the AMs are similarly situated, that the Plaintiffs identify a common, unlawful policy, and that the case could be tried using

representative evidence.  ECF No. 38 (Defendant's Opposition to Motion for Conditional

Certification) at 5.

The Settlement Agreement constitutes a compromise on these crucial, contested factual

issues and not merely a waiver of the FLSA rights of Plaintiffs and Putative Claimants.  For

these reasons, the Settlement Agreement resolves a bona fide dispute.

## II.      The Settlement is Fair, Reasonable, and Adequate.

To determine whether a proposed settlement is fair, reasonable, and adequate, the Court's

task is to ensure the settlement is more than a "mere waiver of statutory rights brought about by

an employer's overreaching."  *Carrillo*, 51 F. Supp. 3d at 132 (quoting *Lliguichuzhca v. Cinema*

*60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013)).  Among the factors that courts consider are

whether the proposed settlement (1) was the result of overreach by the employer; (2) whether the

settlement was negotiated by represented parties at arm's length; and (3) whether "serious

impediments" will frustrate the collection of a judgment by the plaintiffs.  *Id.*

The Court's analysis should consider the totality of the circumstances, and focus on the

"fairness of the process used by the parties to reach settlement and the practical ramifications of

the settlement."  *Id.*  Courts are also mindful of the "strong presumption in favor of finding a

settlement fair," and the "overriding public interest in favor of settlement, particularly in class

action suits."  *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08 Civ. 1310, 2009 WL 3094955, at

*10 (E.D. Va. Sept. 28, 2009).  "A compromise is the essence of a settlement," and the Court

should not require the parties to "justify each term of a settlement agreement against a

hypothetical or speculative measure of what concessions might have been gained since inherent

in compromise is a yielding of absolutes and an abandoning of highest hopes."  *Id.*

A. **The Settlement Agreement is Not the Result of Overreach by the Defendant.**

District Courts in this Circuit have found that "[a] settlement that provides total damages closer to that asserted by the plaintiffs than the defendants would not appear to be one that is a product over employer 'overreaching.'" *Carrillo*, 51 F. Supp. 3d at 133-34; *see also Eley*, 236 F. Supp. 3d at 65; *Sarceno*, 78 F. Supp. 3d at 451.

Here, the $1,990,000 Gross Settlement Amount is substantial given the attendant risks of litigation, even though a recovery might have been greater if Plaintiffs continued to litigate and were able to overcome motions to decertify the collective, succeeded on all claims at trial, proved the maximum extent of their potential damages, and survived an appeal. However, Plaintiffs' Counsel estimates that the Gross Settlement Amount represents approximately 71 percent of Class Members' lost wages from March 27, 2016 to November 16, 2016, which is the maximum period for which any AM could recover under the Court's rulings to date. Abrahamson Decl. ¶ 31.[5]

The Court should find that the Gross Settlement Amount is adequate especially in light of the "presumption in favor of finding a settlement fair." *Sarceno*, 78 F. Supp. 3d at 451 ("[T]he Court is reluctant to reject the appraisal of the parties' counsel that the amounts agreed upon are a reasonable compromise, given the counsel's extensive experience in pursuing and defending FLSA actions generally and familiarity with the underlying facts in this case.").

---

[5]     These calculations assume Class Members worked overtime during an average of 70 percent of workweeks per year, worked five overtime hours a week, and that Defendant were to prevail on the fluctuating workweek argument. Abrahamson Decl. ¶ 31.

**B.      The Settlement Agreement is the Result of Arm's Length Negotiations by Represented Parties.**

"Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable." *Lliguichuzhca*, 948 F. Supp. 2d at 366.  Courts examine several factors to determine that negotiations were arm's length.

Where negotiations are supervised by a mediator, this "bolsters the arm's length nature of the negotiations." *Sarceno*, 78 F. Supp. 3d at 451.  Here, the parties attended mediation with Hunter Hughes, a nationally well-respected wage and hour mediator.  Abrahamson Decl. ¶ 32; *Diaz v. Eastern Locating Service, Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *1 (S.D.N.Y. Nov. 29, 2010) (describing Hunter Hughes as an "experienced class action mediator").  They also attended a settlement conference with Magistrate Judge Mannion in connection with the *Friscia v. Panera Bread Co.*, No. 16 Civ. 03764, case in the District of New Jersey.

Additionally, negotiations occurring over an extended period of time are often presumed to be arm's length.  *See, e.g.*, *Sarceno*, 78 F. Supp. 3d at 451.  Here, the Parties' negotiations took more than two-and-a-half years and occurred on a parallel tract to active litigation. Abrahamson Decl. ¶ 33.

Moreover, where all parties are "represented by counsel with extensive experience in the litigation and negotiation of FLSA disputes, and the settlement was negotiated only after appropriate investigation of the claims and defenses available to the [p]arties," *Carrillo*, 51 F. Supp. 3d at 134 (alterations in original), this factor is usually satisfied.  *See also Eley*, 236 F. Supp. 3d at 64 (observing that the parties engaged in "meaningful discovery and investigation of the claims," attended mediation, and were represented by experienced counsel).  Throughout those negotiations, the Parties were represented by Counsel with extensive experience prosecuting and defending FLSA collective actions.  Abrahamson Decl. ¶ 34.  Outten & Golden

LLP "has an excellent reputation . . . in the field of employment litigation." *Long v. HSBC USA INC.*, No. 14 Civ. 6233, 2016 WL 4764939, at 14 (S.D.N.Y. Sept. 13, 2016). Seyfarth Shaw LLP is a well-known firm that represents many companies. *See Accolades*, https://www.seyfarth.com/accolades (last visited Dec. 17, 2018).

### C.    Serious Impediments to Collection of Judgment

Next, the Court must consider whether the settlement has taken into account "the potential benefits and pitfalls of proceeding to trial," *Sarceno*, 78 F. Supp. 3d at 452, and, in particular, whether Plaintiffs might face any difficulty collecting a judgment. *See, e.g.*, *Lliguichuzhca*, 948 F. Supp. 2d at 365 (noting that the defendant had informed the plaintiffs that it "would not pay if a judgment were entered"); *Eley*, 235 F. Supp. 3d at 65 (citing the fact that the defendant may have faced bankruptcy if judgment were entered).

While this factor can weigh in favor of approval, it should not weigh against it. Even where no party asserts a serious risk of collection, "by settling now, the plaintiffs will 'obtain a recovery without further delay and without incurring additional litigation costs and additional attorney's fees and costs.'" *Carrillo*, 51 F. Supp. 3d at 134 (record citation omitted).

Here, while there is no indication that Defendant is struggling, the restaurant industry is volatile and unpredictable. More importantly, the settlement here accounts for impediments the Plaintiffs may have encountered in obtaining a judgment. In particular, the Settlement Agreement takes into consideration the possibility that Plaintiffs would not prevail at trial in light of the numerous contentious factual disputes between the Parties. Abrahamson Decl. ¶ 35. Furthermore, the value of immediate recovery outweighs the potential for recovery by winning a judgment at trial, considering the cost of continued litigation, the risk of no recovery at all, and the delay that would be caused by a likely appeal after a judgment.

14

**III.      The Attorneys' Fees Request is Fair.**

      **A.      The Court Should Apply the Percentage-of-the-Fund Method.**

Plaintiffs' request for attorneys' fees of one-third of the Gross Settlement Amount plus actual costs and expenses is reasonable.  "[A] percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases."  *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993).  When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The common-fund rule rests on the principle that "[w]here a party creates a substantial fund at the behest of and for the benefit of another party, equity requires that the expenses of the creator of the fund be paid out of the fund."  *United States v. 110-118 Riverside Tenants Corp.*, 886 F.2d 514, 521 (2d Cir. 1989); *accord Boeing*, 444 U.S. at 478.

The percentage-of-the-fund method also promotes early resolution of cases and removes any incentive for plaintiffs' lawyers to multiply litigation to increase their billable hours.  *See Little v. Wash. Metro. Area Transit Auth.*, 313 F. Supp. 3d 27, 34 (D.D.C. 2018) (quoting *In re Black Farmers Discrimination Litigation*, 953 F. Supp. 2d 82, 88 (D.D.C. 2013) ("*In re Black Farmers*"); *McLaughlin v. IDT Energy*, No. 14 Civ. 4107, 2018 WL 3642627, at *7 (E.D.N.Y. July 30, 2018) (explaining that the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation" (quoting *Wal-Mart Stores, Inc. v. IDT Energy*, 396 F.3d 96, 121 (2d Cir. 2005)).

Additionally, percentage-of-the-fund "is less demanding of scarce judicial resources." *Shalala*, 1 F.3d at 1269.  The lodestar method, in contrast, "makes considerable demands upon

judicial resources since it can be exceptionally difficult for a court to review attorney billing

information over the life of a complex litigation." *Id.* The percentage-of-the-fund method also

aligns with the Court's duty to "be mindful of the strong presumption in favor of finding a

[private FLSA] settlement fair." *Carrillo*, 51 F. Supp. 3d at 133 (quoting *Velez*, 2011 WL

4460110, at *1).

While the D.C. Circuit has not ruled on what method Courts should apply to calculate

reasonable attorneys' fees in FLSA class or collective actions, district courts routinely apply the

percentage-of-the-fund method in cases brought under other fee-shifting statutes where the

parties have negotiated a settlement creating a common fund. *See, e.g.*, *Little*, 313 F. Supp. 3d at

34 (Title VII employment discrimination); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179,

205-06 (D.D.C. 2011) (Electronic Fund Transfer Act); *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d

1, 6 (D.D.C. 2008) (D.C. Consumer Protection Procedures Act); *In re Lorazepam & Clorazepate

Antitrust Litig.*, No. 99 Civ. 0790, 2003 WL 22037741, at *8 (D.D.C. June 16, 2003) (Sherman

Act) ("*In re Lorazepam*"); *In re Baan Co. Sec. Litig.*, 288 F. Supp. 2d 14, 16 (D.D.C. 2003)

(Private Securities Litigation Reform Act of 1995) ("*In re Baan*").

Courts in other circuits also regularly apply the percentage method to award fees in

private FLSA settlements. *See, e.g.*, *Bell v. Consumer Cellular, Inc.*, No. 15 Civ. 941, 2017 WL

2672073, at *9 (D. Or. June 21, 2017) (applying percentage-of-the-fund in FLSA collective

action settlement); *Ferreri v. Bask Tech., Inc.*, No. 15 Civ. 1899, 2016 WL 6833927, at *6 (S.D.

Cal. Nov. 21, 2016) (stating that, in the Ninth Circuit, "courts frequently use the percentage-of-

recovery method . . . to determine the reasonableness of fees for FLSA common fund

settlements"); *Monzon v. 103W77 Partners, LLC*, No. 13 Civ. 5951, 2015 WL 993038, at *2

(S.D.N.Y. Mar. 5, 2015) ("The trend in the Second Circuit is to use the percentage of the fund

method . . as it directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources." (citing *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548 , 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012)).

### B. The Court Should Award Plaintiffs' Counsel One-Third of the Fund that Their Work Created.

District Courts consider several factors to determine whether a percentage of the fund attorneys' fees request is reasonable.  They include: (1) the size of the fund created and the number of persons benefited, (2) the presence or absence of substantial objections by class members to the settlement terms or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of litigation, (5) the risk of nonpayment, (6) the time devoted to the case by plaintiffs' counsel, and (7) awards in similar cases.  *In re Black Farmers*, 953 F. Supp. 2d at 88; *see also Trombley*, 826 F. Supp. 2d at 204; *Wells*, 557 F. Supp. 2d at 6; *Little*, 313 F. Supp. 3d at 35.  Courts also have discretion to confirm the reasonableness of an award by conducting a lodestar cross-check.  *In re Black Farmers*, 953 F. Supp. 2d at 101; *Wells*, 557 F. Supp. 2d at 7.

Here, Plaintiffs' seek approval of attorneys' fees of one-third of the Gross Settlement Amount, $663,333.33, which is reasonable under the present circumstances.  One-third is the standard percentage award in FLSA settlements.  *See, e.g.*, *Scovil v. FedEx Ground Package Sys., Inc.*, No. 10 Civ. 515, 2014 WL 1057079, at *1 (D. Me. Mar. 14, 2014) (approving one-third of $5.8 million settlement fund in FLSA misclassification case); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *2, *12 (S.D.N.Y. Apr. 16, 2012) (awarding Outten & Golden LLP one-third of the $2,530,000 fund where its lawyers "zealously

represented the interests of their clients and provided a high quality of representation"); *Brumley v. Camin Cargo Control, Inc.*, Nos. 08 Civ. 1798, 10 Civ. 2461, 09 Civ. 6128, 2012 WL 1019337, at *12 (D.N.J. Mar. 26, 2012) ("Counsel's request for one-third of the settlement fund falls within the range of reasonable allocations in the context of awards granted in other, similar cases."); *see also* 5 Newburg on Class Actions § 15.73 (54th ed. 2018) ("fee awards in class actions average around one-third of the recovery").

### i.      Size of the Fund and the Number of Persons Benefited (Factor 1).

The Gross Settlement Amount is substantial and all of the approximately 2,603 Putative Claimants are entitled receive a portion.  Plaintiffs estimate the average recovery for each Putative Claimant is $1,052.31.  Abrahamson Decl. ¶ 36.  The Gross Settlement Amount represents approximately 71 percent of the Qualified Claimant's unpaid wages, which is a fair recovery.  *Id.* ¶ 31; *see, e.g.*, *Morris v. Affinity Health Plan*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (approving an FLSA settlement representing approximately 38% of the estimated value of the case).  Thus, "each class member will receive significant value from this settlement."  *Wells*, 557 F. Supp. 2d at 7 (holding that 1,191 class members received significant value from $800,000 settlement, which broke down to $150, $600, or $1,200 per class member); *see also Cohen v. Chilcott*, 522 F. Supp. 2d 105, 122 (D.D.C. 2007) (two million class members and common fund of $8.3 million); *Trombley*, 826 F. Supp. 2d at 204 (2.4 million class members and $8.4 million common fund).

### ii.      Skill and Efficiency of Plaintiffs' Counsel and Time Devoted to the Case (Factors 2 and 5).

Plaintiffs' Counsel litigated this case with skill and efficiency.  Plaintiffs' Counsel have, collectively, decades of experience prosecuting wage and hour lawsuits.  Abrahamson Decl. ¶ 11; *see also Long*, 2016 WL 4764939, at *14.  In this case, Plaintiffs' Counsel successfully

obtained nationwide collective certification, which Defendant vigorously opposed, and guided

the case to a successful resolution.  *See Wells*, 557 F. Supp. 2d at 7 (approving fee for

"experienced class counsel" who "obtained class certification, broadened the class through

discovery and litigation, and negotiated the case to this successful resolution," all of which was

contested by the defendant); *Cohen*, 522 F. Supp. 2d at 122 (approving fee where counsel

obtained a settlement "in the face of substantial defenses").  Additionally, Plaintiffs' Counsel has

experience overseeing the claims administration process.  *See In re Black Farmers*, 953 F. Supp.

2d at 92 (considering class counsels' effectiveness at managing claims administration process as

part of fee analysis).  These factors weigh in favor of finding that the attorneys' fees are

reasonable.

### iii. Complexity and Duration of Litigation and Risk of Nonpayment (Factors 3 and 4).

The Parties litigated this case for approximately one year, which followed many months

of pre-suit negotiations.  *See* Abrahamson Decl. ¶ 19.  During this period, the Parties

aggressively prosecuted and defended their interests through rigorous motion practice.  *See*

*supra*; *see also In re Vitamins Antitrust Litig.*, No. 99 Civ. 197, 2001 WL 34312839, at *11

(D.D.C. July 16, 2001) ("While there was no lengthy litigation, counsel should not be penalized

for achieving an effective and efficient settlement.").  Additionally, the Parties engaged in

negotiations for nearly a year-and-a-half prior to the commencement of the suit.  Abrahamson

Decl. ¶¶ 12-19.

Perhaps of greatest importance, the issues in the case were relatively complex.  *See*

*Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981) ("FLSA claims typically

involve complex mixed questions of fact and law . . . .  These statutory questions must be

resolved in light of volumes of legislative history and over four decades of legal interpretation

and administrative rulings."); *Trombley*, 826 F. Supp. 2d at 205 ("Although the duration of

litigation was relatively short (there were no dispositive motions filed), the issues to be resolved

in this case were complex.").  Resolution of the various factual disputes would have likely

required extensive motion practice and a protracted discovery period, and the challenges with

ascertaining and quantifying damages would have been numerous.  Abrahamson Decl. ¶ 37.

Plaintiffs' Counsel also took this case on a pure contingency fee basis and has not

received any payment for any of its work.  Moreover, there was no certainty that Plaintiffs would

win or that the case would settle.  Abrahamson Decl. ¶ 38.  Recovery was not assured because

Defendant disputed nearly every aspect of Plaintiffs' claims and aggressively defended the case.

*Id.* ¶ 39; *see also Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 597 (N.D. Ill. 2011) (noting

that "the number of potential meritorious defenses" created a greater risk of nonpayment).  The

risk that Plaintiffs' Counsel incurred was compounded by the fact that the collective would

potentially consist of thousands of individuals and, as a result, require an immense amount of

resources to prosecute.  Abrahamson Decl. ¶ 40.  Thus, these factors weigh in favor of approving

the attorneys' fee award in the Settlement Agreement.

### iv.    Awards in Similar Cases (Factor 6).

"Once it is determined that the attorneys are entitled to be paid from the common fund, it

is the duty of the court to determine the appropriate amount."  *Democratic Cent. Comm. of Dist.*

*of Columbia v. Wash. Metro Area Transit Comm'n*, 3 F.3d 1568, 1573 (D.C. Cir. 1993).  A one-

third percentage of the fund is within the range of acceptable awards in this District.  *See Radosti*

*v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 78-79 (D.D.C. 2011) (approving a 33% award);

*Wells*, 557 F. Supp. 2d at 7 (approving a 45% award); *In re Vitamins Antitrust Litig.*, 2001 WL

34312839, at \*10 (approving a one-third percentage award and noting that "fee awards in

common fund cases range from fifteen to forty-five percent").  Courts in other circuits also routinely award one-third of a common fund.  *See infra* p. 16-17.  Thus, the court should approve the one-third attorneys' fee award in this case.

### v.    A Lodestar Cross-Check Confirms the Attorneys' Fees are Reasonable.

Courts are not required to perform lodestar cross-checks in this Circuit.  *See Trombley*, 826 F. Supp. 2d at 205.  However, the Court has discretion to conduct a lodestar cross-check to confirm the reasonableness of an attorneys' fee award.  *In re Black Farmers*, 953 F. Supp. 2d at 101.  In calculating the lodestar for cross-check purposes, "the hours documented by counsel need not be exhaustively scrutinized by the district court."  *Goldberger v. Integrated Resources, Inc.* 209 F.3d at 50 (2nd Cir. 2000).  Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case."  *Id*.  A lodestar enhancement, or "multiplier" of two or less times the lodestar "is unremarkable in common fund cases,"  *In re Black Farmers*, 953 F. Supp. 2d at 102, and falls "well within a range that is fair and reasonable,"  *In re Baan*, 288 F. Supp. 2d at 19-20.  *See also In re Lorazepam*, 2003 WL 22037741, at *9 (stating that multipliers as high as 4 are awarded in common fund cases); *Shalala*, 1 F.3d 1263 at 1272 (approving a 3.3 multiplier); *Sewell*, 2012 WL 1320124, at *13 (approving a 2.93 multiplier); *In re Medical X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *7 (E.D.N.Y. Aug. 7, 1998) (noting that a multiplier of 1.67 is "at the low end of multipliers used in other cases").

If the Court chooses to conduct a lodestar cross-check, it will confirm that the requested attorneys' fees are reasonable.  Plaintiffs' Counsel worked approximately 822.8 hours on this case.  Abrahamson Decl. ¶ 41; Ex. D (Attorneys' Fees).  This total is under-inclusive.  Outten & Golden LLP proactively omitted the time of any attorney or support staff who worked less than four hours on this case.  Abrahamson Decl. ¶ 41.  Multiplying the hours of each attorney by a

21

reasonable hourly rate for that attorney, lodestar for this case is approximately $354,285.00. *Id.*

¶ 42; Ex. D (Attorneys' Fees). Thus, the attorneys' fees negotiated in this settlement is 1.87

times the lodestar amount.

## IV. Plaintiffs' Counsel is Entitled to Reimbursement of Expenses Under the Settlement Agreement.

Plaintiffs' Counsel request reimbursement of $13,981.59 in out-of-pocket expenses to be

paid from the Gross Settlement Amount. "Courts typically allow counsel to recover their

reasonable out-of-pocket expenses." *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL

2025106 (E.D.N.Y. Jan. 20, 2010) at *9; *see also In re Indep. Energy Holdings PLC Sec. Litig.*,

302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable

out-of-pocket expenses incurred and customarily charged to their clients, as long as they were

incidental and necessary to the representation of those clients." (internal quotation marks and

citation omitted)); *In re Black Farmers*, 953 F. Supp. 2d at 96 (noting that "[a]bsent the

settlement of his case, [plaintiffs' counsel] might never have been reimbursed for many of these

costs and expenses"); *Little*, 313 F. Supp. 3d at 38-39 (approving $950,000, or 11% of the

common fund, in costs); *In re Baan*, 288 F. Supp. 2d at 21 (approving $1,241.098.77 in costs

from $10.4 million common fund settlement). Here, Plaintiffs' Counsel's actual expenses of

$13,981.59 were incidental and necessary to the representation of the Class. Abrahamson Decl.

¶ 43. These expenses include computerized research, court fees, postage fees, travel expenses,

working meals, photocopies, telephone charges, messenger, and Plaintiffs' share of the

mediator's fees. Ex. E (Costs); *see also Trombley*, 826 F. Supp. 2d at 208 (noting that expenses

for travel, meals, lodging, legal research, court fees, photocopies and telephone calls "are the

kind of expenses expected and anticipated during the ordinary course of litigation").

## V.	The Requested Service Payments are Fair.

The service payments that Plaintiffs request are reasonable given the contributions that Plaintiffs made to the prosecution and resolution of the lawsuit.  *Netzel v. West Shore Grp., Inc.*, No. 16 Civ. 2552, 2017 WL 1906955, at *7 (D. Minn. May 8, 2017) (collecting cases) ("Service awards, or incentive payments, are routinely awarded in FLSA collective actions.").  Courts acknowledge that plaintiffs in collective action cases play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny.  *See, e.g.*, *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ("In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."); *Little*, 313 F. Supp. 3d at 35 (quoting *In re Lorazepam*, 2003 WL 22037741, at *10) (service payments "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."); *see generally* Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006).

Here, Named Plaintiffs and Opt-In Plaintiffs were instrumental to winning Plaintiffs' motion for nationwide collective certification.  Abrahamson Decl. ¶ 44; *see also* ECF No. 45. They also provided significant information to Plaintiffs' Counsel that aided in the litigation and settlement negotiations.  Abrahamson Decl. ¶ 45.

They also faced substantial risk in coming forward publicly and aiding in the litigation of this matter.  In the workplace context, where workers are often blacklisted if they are considered

"trouble makers," plaintiffs who sue their employers are particularly vulnerable to retaliation.[6]
*See Netzel*, 2017 WL 1906955, at *7 ("service or incentive awards are particularly appropriate in
the employment context as the plaintiff is often a former or current employee of the defendant,
and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole,
undertaken the risk of adverse actions by the employer or co-workers") (quoting *Frank*, 228
F.R.D. at 187) (internal quotation marks omitted)); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ.
6548, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) (recognizing that plaintiffs in wage
and hour lawsuits "fac[e] potential risks of being blacklisted as 'problem' employees").

    Even where, as here, there has been no threat or indication of retaliation, plaintiffs merit
recognition for assuming potential risk in bringing suit. *See Guippone v. BH S&B Holdings,
LLC*, No. 09 Civ. 1029, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Even where there is
not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit
recognition for assuming the risk of such for the sake of absent class members."). Although
Represented Named Claimants' and Represented Opt-In Claimants were no longer working for
Defendant when they joined this lawsuit, they risked retaliation from their current employers and
put their ability to secure future employment at risk as well. *See Netzel*, 2017 WL 1906955, at
*7 ("a named plaintiff coming forward and potentially placing their careers at risk supports
granting of service award").

    Such actions constitute a significant investment in the case and exposed the Named
Plaintiffs and Opt-In Plaintiffs to substantial risk. Thus, $10,000 for the Named Plaintiffs and
$5,000 for the Opt-In Plaintiffs is a reasonable service payment. *See Trombley*, 826 F. Supp. 2d

---

[6]    The Parties are unaware of any indication that might suggest that these Plaintiffs were
blacklisted by any employer associated with Defendant.

at 207 (approving $5,000 incentive awards for plaintiffs that participated in case phone calls,

provided "detailed descriptions of their banking behavior and experiences," and gave

documentary evidence); *In re Lorazepam*, 2003 WL 22037741, at *11 (approving $20,000

service payments because the plaintiffs "ultimately played a role" in obtaining settlement and the

class "benefitted . . . from the time expended by the class representatives[s]").  Additionally, the

amount of the service payments amounts to two percent of the settlement, a small percentage of

the total fund.  *See Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *9

(S.D.N.Y. Aug. 16, 2011) (approving awards of approximately 16.6% of the total recovery);

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at *2

(S.D.N.Y. Feb. 9, 2010) (11% of recovery is reasonable "given the value of the representatives'

participation and the likelihood that class members who submit claims will still receive

significant financial awards"); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y.

2005) (awarding service payments of approximately 8.4% of the total recovery).

## CONCLUSION

Plaintiffs respectfully request that the Court issue an order: (1) approving the

$1,990,000.00 settlement set forth in the Settlement Agreement; (2) approving the proposed

Notice of Settlement and Opportunity to Join Collective Action ("Settlement Notice"); (3)

approving Service Payments of $10,000 to each of the Plaintiffs and $5,000 to each of the Opt-In

Plaintiffs who have assisted in the litigation of this case; (4) approving Plaintiffs' request for

one-third of the settlement fund for attorneys' fees, plus reimbursement of costs and expenses;

(5) approving the Claims Administrator's fees and costs; and (6) incorporating the terms of the

Settlement Agreement.

Dated: December 27, 2018
      Washington, D.C.

Respectfully submitted,

/s/ Sally J. Abrahamson
**OUTTEN & GOLDEN LLP**
Sally J. Abrahamson (99058)
Lucy B. Bansal (MD06639)
601 Massachusetts Avenue NW
Second Floor West Suite
Washington, D.C. 20001
Telephone: (202) 847-4400
Facsimile: (202) 847-4410

Justin M. Swartz (admitted *pro hac vice*)
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

*Attorneys for Plaintiffs*